**Marty PERKINS, Appellant,**

v.

**RUNYAN HEATING & COOLING SERVICES, INC.,**
**Respondent.**

**No. WD 50578.**

Missouri Court of Appeals,
Western District.

Submitted May 22, 1996.

Decided Sept. 3, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 29, 1996.

Application to Transfer Denied
Dec. 17, 1996.

David T. Greis, Kansas City, for appellant.

Paul P. Hasty, Jr., Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and LOWENSTEIN and SMART, JJ.

PER CURIAM.

Marty Perkins appeals from a verdict in this personal injury action assessing 90% fault to him and 10% fault to the defendant,

Runyan Heating & Cooling Services, Inc. ("Runyan"). Perkins contends that: (1) the trial court erred in denying his *Batson* challenge to Runyan's use of a peremptory strike of an African–American venireperson; (2) the trial court erred in admitting evidence of his receipt of workers' compensation benefits and a third-party settlement; (3) the trial court erred in giving a comparative fault instruction, because there was no evidentiary basis for any assertion of negligence and the phrase "during the operation" gave the jury a roving commission; (4) the trial court erred in permitting improper closing argument; and (5) the cumulative effect of the errors warrants reversal. The judgment of the trial court is affirmed.

On April 17, 1985, Perkins was working in the maintenance department of the Rockhill Nursing Center ("Rockhill"). Paul Crowe, an employee of Runyan, was sent to Rockhill to service the air conditioning unit. Perkins was directed by his supervisor to assist Crowe in removing manifolds. In the course of removing a manifold, Perkins' right hand was injured. The injury occurred when Crowe was attempting to remove a bottom manifold that Perkins estimated weighed 50 to 80 pounds. The manifold was stuck. Perkins had his right hand under the manifold. Crowe told Perkins, "we'll stand up and I'll apply pressure and see if we can't break this thing loose." Crowe and Perkins had eye contact at the time of this discussion. Crowe put both of his feet on the manifold and it broke loose. He was unaware that Perkins still had his hand under the manifold. Perkins received medical attention for his injured hand and returned to work the same day. Perkins did not lose any time from work except for physical therapy sessions. The total medical expense incurred as a result of Perkins' injury was $895.00.

Perkins left his job in June, 1986 for reasons unrelated to the accident. He moved to California and began work as an electrician. In October, 1987 he fell from a ladder and fractured his left wrist. Perkins submitted a workers' compensation claim for the 1987

accident and also filed a lawsuit against the contractor over the accident. Perkins did not look for a job until 1991, when he completed his junior college program. Besides receiving a workers' compensation settlement, he settled his claim against the contractor for $85,000.00.

Perkins filed suit against Runyan and a jury trial was held on September 13, 1994. Damages were assessed in the amount of $23,333.33. The jury found Runyan to be 10% at fault and Perkins to be 90% at fault. Perkins appeals.[1]

### *Batson*

█ In his first point, Perkins contends that the trial court erred in overruling his challenge to the use of a peremptory strike of Gerald Blewett, an African–American. Perkins claims that the reason given for the strike, that Blewett was unemployed, was pretextual because a white woman seated on the jury was also unemployed. During *voir dire*, Blewett stated that he was unemployed. Counsel for Perkins claimed that striking Blewett was pretextual, "cause he's the only black juror and he didn't answer one question, that there has to be sufficient basis other than his race to strike him and I do think that there's an absence of that on the record." The court pointed out that Blewett had answered some questions and counsel for Runyan responded that race "had nothing to do with it" and said that he struck Blewett because Blewett was unemployed. Perkins' counsel acknowledged that no one else was unemployed that Runyan's counsel did not strike. Perkins now claims that Delma Pritchett, a white woman who was seated on the jury, was unemployed. Pritchett, however, was not unemployed. During *voir dire* she identified her occupation as "homemaker."

█ Perkins relies upon *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), in which the United States Supreme Court held that a litigant in a civil case may not use peremptory challenges to exclude a juror solely be-

---

1. Rule 81.18(b) states, "A volume of transcript shall not exceed two hundred pages." Perkins has submitted a transcript that is nearly triple the allowable amount of pages per volume of transcript.

cause of race, thus extending the rationale of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) into the civil arena. The prosecutor's reason for a peremptory strike need not be persuasive or even plausible. *Purkett v. Elem,* —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). The reason offered by the prosecutor will be deemed race neutral unless some discriminatory intent is inherent in the explanation given. *Id.*

Perkins has not established the necessary elements to establish a *Batson* violation. There is no discriminatory intent discernable here. In the first place, Pritchett was not unemployed. Perkins' counsel acknowledged on the record that none of the other members of the venire were unemployed. Ironically, Perkins' rehabilitation expert also affirmed the difference between being a homemaker and being unemployed. In defining "Occupational Therapy Association," the expert testified, "Well, it is a therapy that is connected with rehabbing people to assume the work that they formerly did, whether it was being a housewife or industrial worker or whatever...." The explanation given by Runyan was race-neutral. It was also legitimately related to an issue in the case. Perkins' unemployment was an issue in the case because of Perkins' claim for lost income due to the 1985 injury during the time he was unemployed and not seeking employment following the 1987 accident. Consequently, there was no basis for inferring that the explanation was pretextual; no discriminatory intent is inherent in the explanation. Point I is denied.

### Collateral Source Rule

■ In Point II, Perkins asserts that the trial court erred in admitting evidence of Perkins' receipt of workers' compensation benefits and evidence of a third party settlement in connection with Perkins' 1987 unrelated accident because this evidence was neither relevant nor material to any issue in the case and was unduly prejudicial. Perkins argument on this point is based upon a misunderstanding of the collateral source rule. The collateral source rule provides that a wrongdoer may not have his damages re-

duced by showing that a plaintiff has or will receive compensation or indemnity for the loss from a wholly independent, collateral source. *Washington by Washington v. Barnes Hosp.,* 897 S.W.2d 611, 619 (Mo. banc 1995); *Collier v. Roth,* 434 S.W.2d 502, 506–507 (Mo.1968). The collateral source rule has no application in the instant case. The items of evidence that Perkins complains of, the workers' compensation payments and the third party settlement, were related to his 1987 accident and not to his injury forming the subject matter of the instant action. Such evidence was relevant in view of the fact that Perkins claimed lost income for the years following the 1987 accident.

■ Furthermore, Perkins himself introduced the subject. Paula Perkins, plaintiff's wife, was asked during direct examination whether Perkins received assistance financially as a result of the 1987 injury. She testified that he received approximately $240.00 per week and was compensated for the injury. "A party who opens up a subject is held either to be estopped from objecting to its further development or to have waived his right to object to further development." *State ex rel. Missouri Highway & Transp. Comm'n v. Cowger,* 838 S.W.2d 144, 147 (Mo. App.1992). Point II is denied.

### Jury Instructions

Perkins, in Point III, argues that the trial court erred in submitting a comparative fault instruction to the jury because there was no evidentiary basis for an assertion of negligence on the part of Perkins. He also contends that the challenged instruction failed to properly define the phrase "during the operation" thus giving the jury a roving commission to find negligence on his part. The instruction read:

> In your verdict you must assess a percentage of fault to the plaintiff, whether or not defendant was partly at fault, if you believe:
>
> First, either:
>
> Plaintiff failed to maintain a proper lookout for his own safety, or

Plaintiff placed his hand beneath the manifold device during the operation to remove it, and

Second, plaintiff, in any one or more of the respects submitted in Paragraph First, was thereby negligent, and

Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

■ An issue that is submitted in an instruction must be supported by a sufficient evidentiary foundation. *Oldaker v. Peters,* 817 S.W.2d 245, 251 (Mo. banc 1991). We review the evidence in the light most favorable to the submitting party and if the submission of the instruction is supportable under any theory, then submission is proper. *Id.* at 251–52. A case should be reversed on the basis of instructional error only when the error "materially affects the merits of the action." *Patton v. May Dep't Stores Co.,* 762 S.W.2d 38, 42 (Mo. banc 1988).

■ We note at the outset that Perkins failed to preserve for appeal the issue of whether the evidence supported the submission. Rule 70.03 states:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

During the instructions conference, Perkins' counsel objected to instruction No. 7, saying:

Yes, Your Honor, because I think when it says first either plaintiff failed to maintain a proper lookout for his own safety, comma, or plaintiff placed his hands beneath the manifold device during the operation to remove it. It says the same things. It's redundant, it's got a roving commission about his own safety in the first portion and during the operation that's a roving commission because we don't know whether or not we're talking about during a particular time when the top was taken off or bottom one. So they are redundant and repetitious and also vague.

Perkins did not object to the instruction on the ground that the submission was not supported by the evidence. In any event, the record amply supports the submission of comparative fault to the jury. The injury occurred when Crowe was attempting to remove a bottom manifold weighing 50 to 80 pounds. Perkins had his right hand under the manifold. He was informed by Crowe that Crowe intended to apply pressure to the manifold by standing on it. Perkins kept his hand under the heavy manifold during this procedure, knowing that Crowe was putting pressure on it.

■ Perkins' contention that the phrase "during the operation" should have been defined has not been preserved for appeal. It is true that Perkins objected that the language was vague and created a roving commission. However, Perkins did not suggest that the phrase be defined, nor did he submit a proposed instruction defining the phrase. He cannot now blame the court for failing to define the phrase. In any event, we see no reason to believe the jury was confused or misled about the particular assertion of negligence. Point III is denied.

### Closing Argument

In Point IV, Perkins complains that the trial court erred in allowing improper closing argument, including suggestions that Perkins' experts were "hired guns" whose opinions could be purchased. He contends also that counsel made an appeal to local prejudices by referring to Perkins' experts as being from outside of Kansas City.

During closing argument, counsel for Runyan stated:

He was living in California, his lawyer had him come to a doctor that he had never heard of in Overland Park, Kansas.... And this doctor, that's Dr. Fishman, said, "I'm not a hand expert Dr. Lanny Harris is a hand expert." But he said "I was in school when all this occurred." "And I've been paid" and you heard—you now know the medical expense is 900 and a few dollars. They paid more than that to Dr. Fishman to get him to come testify.... And it didn't stop there. You heard from

Mr. Jayne. They paid him even more to come tell you that he didn't know what plaintiff was earning at the time.....

He admits that he knows that Mr. Perkins went to a better paying job after this incident occurred.... But if you pay someone from Iowa enough, maybe you get an opinion, but now you've got—

MR. PICKETT: Your Honor, I object, that's totally impropriety. That's an accusation against counsel.

MR. HASTY: That is not an accusation against counsel at all.

THE COURT: Ladies and gentlemen, be guided by the evidence as you remember it, please.

MR. HASTY: You folks heard the evidence, you heard the evidence and that's exactly what the man said. He said he made sixty to seventy thousand dollars a year doing that. Talks to someone on the phone, read what the lawyer sends, an opinion. You go get an opinion from Iowa.... That's what was going on, but you hire someone from Iowa to come and say well, he couldn't work.

MR. PICKETT: Same objection, same reason, Your Honor.

THE COURT: Overruled.

▮▮▮▮ The trial court enjoys broad discretion in determining the propriety of closing argument. *Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839, 844 (Mo. banc 1992). The trial court is in a superior position to make a determination as to the effect of closing argument and fashion a remedy for improper closing arguments. *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 881 (Mo. banc 1993). We will not disturb the trial court's ruling on appeal save for an abuse of discretion. *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 870 (Mo. banc 1993). Traditionally, counsel is given great latitude to suggest inferences from the evidence, even where the inferences seem illogical or erroneous. *Id.*

▮▮▮▮ In this case, the arguments made by counsel were based upon the evidence concerning substantial compensation paid to the experts. Counsel desired to cause the jury to believe that the experts were willing to compromise their objectivity in order to profess opinions useful to plaintiff's claims, in order to make lucrative work for themselves in court. There is nothing new about this argument. Lawyers are permitted to decry the lack of objectivity of the courtroom expert, as long as there is some evidence, such as evidence of the expert's compensation, which supports the inference. Similar closing arguments have been held to be within permissible parameters. *See Oldaker*, 817 S.W.2d at 253–54. Of course, that does not mean that it is proper to suggest that the fact that plaintiff obtained an out-of-state expert indicated that the expert should not be believed, or to imply, without foundation, that plaintiff could not find a Missouri expert.

However, the complaint on appeal is not about the attack on the experts, but about an implied attack on plaintiff and plaintiff's counsel. We agree that the assertion that "if you pay someone from Iowa enough, maybe you get an opinion," and the later comment that "you hire someone from Iowa to come in and say, well he couldn't work" were improper to the extent they could be understood as accusing plaintiff and his attorney of negotiating compensation in order to obtain a particular opinion. We find no evidence in the record supporting an inference that plaintiff was guilty of negotiating for a particular opinion, and any argument to that effect is highly improper. Generally, it is unprofessional to make unwarranted personal accusations, and trial courts may take appropriate action, including publicly admonishing counsel, in order to deter such improper conduct. In this case, however, it is not entirely clear exactly what counsel was attempting to say, and the disavowal by counsel of any intent to make a personal accusation against counsel, whether sincere or not, was somewhat confusing. The trial court first did not explicitly rule on the objection, but instead asked the jury to be guided by the evidence. Then, the court overruled the subsequent objection. We believe it would have been appropriate to sustain the objection, and to admonish counsel, to the extent that the argument leveled an unsubstantiated accusation against plaintiff and plaintiff's counsel. Nevertheless, the

court's request that the jury allow itself to be guided by the evidence, and the disavowal by defendant's counsel, softened any adverse effect. Consequently, based upon our review of the entire record, we conclude that any error in overruling the objection was harmless in this case.

### Cumulative Error

In his final point, Perkins contends that the cumulative effect of the trial court's errors warrants reversal even though the errors, considered individually, do not warrant the grant of a new trial. *Faught v. Washam*, 329 S.W.2d 588, 604 (Mo.1959). However, apart from the ruling on the defense's closing argument, which we found harmless, no error has been found. There are no errors warranting reversal. Point V is denied.

The judgment of the trial court is affirmed.