Rhonda BOWLS, et al., Appellants,

v.

Betty SCARBOROUGH, M.D., et al., Respondents.

No. WD 51323.

Missouri Court of Appeals, Western District.

Sept. 9, 1997.

---

David T. Greis, Kansas City, for appellants.

Hal D. Meltzer, Kansas City, Turner & Boisseau, for respondents.

Before ELLIS, P.J., and LOWENSTEIN and HOWARD, JJ.

ELLIS, Judge.

On July 17, 1986, at 1:15 p.m., Bobby Bowls entered the Research Medical Center Emergency Department complaining of chest pain. Dr. Betty Scarborough was the only physician staffing the Emergency Department at that time. Within five minutes of his arrival, Dr. Scarborough conducted an initial examination of Mr. Bowls. Mr. Bowls told Dr. Scarborough that he had had chest pain for about an hour and that there was no history of cardiac disease in his family. Mr. Bowls also told her that he felt nauseated and that he had been drinking heavily the day before.

Dr. Scarborough considered a number of possible causes for Mr. Bowls' symptoms including pneumothorax, coronary ischemia, pulmonary embolism, aortic dissection, musculo-skeletal injury, and gastrointestinal disease. Dr. Scarborough ordered morphine to ease Mr. Bowls' stress and pain, in addition to other medication for his nausea. The nursing staff started an intravenous line and oxygen by nasal cannula. Dr. Scarborough ordered an electrocardiogram (EKG), chest x-rays, blood tests, and testing of the arterial blood gases. Mr. Bowls was moved from an intermediate care room to the critical care room. In response to the morphine and oxygen, Mr. Bowls' blood pressure began to decrease.

Mr. Bowls' first EKG was completed at 1:40 p.m. The computer interpreted the EKG as being consistent with pericarditis, but Dr. Scarborough felt that the ST segment elevations demonstrated on the EKG were consistent with an acute injury pattern and possible myocardial infarction (heart attack).

When Mrs. Bowls arrived at the emergency room, she informed the hospital staff that her husband was insured through Total Health Care and that his primary care physician was Dr. Steven Gruenebaum. This information was handwritten onto Mr. Bowls' medical record. Mrs. Bowls believed that under the terms of the Total Health Care plan, Dr. Gruenebaum's approval was required before emergency treatment could be initiated. For this reason, Mrs. Bowls had attempted to contact Dr. Gruenebaum from her office upon learning of her husband's chest pain. After being placed on hold by Dr. Gruenebaum's office for an extended period of time, Mrs. Bowls gave up and proceeded to Research Hospital. Mrs. Bowls again called Dr. Gruenebaum's office from the emergency room and was informed by his office staff that the emergency physician was only authorized to conduct an initial evaluation.

This information was relayed to Dr. Scarborough. By that time, Dr. Scarborough had ordered a second EKG, and Mr. Bowls was responding to the morphine and oxygen. Dr. Scarborough attempted to contact Dr. Gruenebaum directly to arrange for Bowls' admission to the hospital under the care of an internist or cardiologist. Dr. Scarborough was initially unable to reach Dr. Gruenebaum, but Dr. Gruenebaum called her back about ten minutes later at 2:20 p.m. Dr.

Scarborough told Dr. Gruenebaum that Mr. Bowls had arrived at the emergency room complaining of chest pain and that Dr. Gruenebaum's name appeared on Mr. Bowls' Total Health Care card as his primary care physician. Dr. Scarborough told Dr. Gruenebaum that the computer had interpreted Mr. Bowls' EKG as diagnostic of pericarditis but that she thought the patient might be experiencing a myocardial infarction. Dr. Scarborough discussed Mr. Bowls' condition and possible need for an angioplasty procedure, and she asked Dr. Gruenebaum which internist or cardiologist he would like to have admit Mr. Bowls.

Dr. Gruenebaum told Dr. Scarborough that he did not know Mr. Bowls and that he was "sick of people doing this to him." Dr. Gruenebaum refused to authorize admission and stated that he would only become involved in Mr. Bowls' care if he was sent to Baptist Hospital where he had admitting privileges. Dr. Scarborough informed Dr. Gruenebaum that Mr. Bowls was not stable enough to be transferred to another hospital. Dr. Gruenebaum reiterated his refusal to authorize treatment and told Dr. Scarborough to call Total Health Care to get authorization for a cardiology consult.

Dr. Scarborough told the emergency room nurse to call Total Health Care and a cardiologist. She also ordered another EKG. At 2:30 p.m., Dr. Scarborough talked to Dr. James Eynon, a cardiologist with admitting privileges at Research Medical Center. Dr. Scarborough told Dr. Eynon that she needed an emergency cardiology consult on a thirty year old patient with chest pain. She also told him that the computer analysis of the EKG suggested pericarditis but that she thought Mr. Bowls was sicker and might be experiencing a myocardial infarction. After Dr. Scarborough told Dr. Eynon that Dr. Gruenebaum had refused to authorize a cardiology consult, Dr. Eynon told her that he would not come down to the emergency room until Total Health Care gave its approval for cardiology services.

Dr. Scarborough next spoke with a representative from Total Health Care. The representative told her that approval for a cardiology consult and hospital admission would need to come from a supervisor who was unavailable at the moment.

Dr. Scarborough then told Mrs. Bowls of her belief that Mr. Bowls needed treatment by an internist or cardiologist and potentially needed an angioplasty. Dr. Scarborough also explained to Mrs. Bowls that the cardiologist, Dr. Eynon, was insisting on Total Health Care's authorization before performing any procedure.

Shortly after 3:00 p.m., Dr. Scarborough called Total Health Care back and was told that the supervisor had not yet returned. Dr. Scarborough told the representative that Total Health Care was delaying treatment of a man with a possible myocardial infarction. The representative then told Dr. Scarborough that her supervisor had just walked in and promised to call back.

Also about 3:00 p.m., Dr. Eynon arrived in the emergency room and examined Mr. Bowls' EKGs. Dr. Eynon felt that the pattern shown in the EKGs was consistent with myocardial infarction. Dr. Eynon entered Mr. Bowls' room and told Mrs. Bowls that he would "get things moving" once he received approval from Total Health Care.

While Dr. Eynon was talking with Mrs. Bowls, at about 3:15 p.m., Total Health Care called back, authorizing Mr. Bowls' admission and evaluation by a cardiologist. Dr. Scarborough relayed this information to Dr. Eynon.

Dr. Eynon ordered more morphine and sublingual nitroglycerin for Mr. Bowls. He then left the emergency room to prepare for an angioplasty procedure on Mr. Bowls. After Dr. Eynon left the emergency room, Mr. Bowls experienced an intractable arrhythmia. Dr. Scarborough was unable to resuscitate Mr. Bowls, who was pronounced dead at 4:58 p.m.

An autopsy later revealed that Mr. Bowls suffered from left ventricular hypertrophy and that his left anterior descending coronary artery was 95% occluded. The occlusion resulted in a lack of oxygen to the heart, making Mr. Bowls susceptible to arrhythmia.

On July 14, 1989, Mrs. Bowls and her children filed a petition for damages in the

Circuit Court of Jackson County. Mrs. Bowls and her children eventually entered settlement agreements with Dr. Gruenebaum and Dr. Eynon, and on April 13, 1992, voluntarily dismissed the petition as to other defendants without prejudice. On April 12, 1993, Mrs. Bowls and her children filed a second petition for damages in the Circuit Court of Jackson County alleging negligence on the part of Dr. Scarborough and claiming that Spectrum Emergency Care, Inc. was vicariously liable for that negligence. Trial began on March 27, 1995, and ended with a jury verdict in favor of Dr. Scarborough and Spectrum Emergency Care ("Respondents") on April 7, 1995. Mrs. Bowls and her children ("Appellants") bring seven points on appeal.

In their first point, Appellants claim the trial court erred in not granting a mistrial after Respondents argued and presented evidence suggesting comparative fault on the part of Mr. and Mrs. Bowls. Appellants argue that Respondents were improperly allowed to comment on Mr. Bowls' failure to go to a doctor while suffering chest pain for two months prior to his death and on Mrs. Bowls' attempts to call Dr. Gruenebaum rather than 911. In presenting this point, Appellants attempt to claim error through a combination of different rulings by the trial court.

■ Appellants' initial complaints relate to Respondents' opening statements. Early in those statements, Respondents commented:

> Now, [Mr. Bowls] didn't have ... that 95 percent occlusion for just that day of July 7, 1986. He had had it for a long time. He'd had chest pains in that regard for a long time and he had not gone to see a doctor about it.

Appellants objected to the comment that Mr. Bowls had not gone to see a doctor about his chest pains, and moved for a mistrial. Prior to trial, the court had granted a motion *in limine* stating that Respondents could "talk about his chest pain, but not talk about anything other than the fact that he'd had chest pains prior to this particular occurrence."[1]

The trial court denied the motion for mistrial.

The court then allowed Respondents to state that, if admitted, the evidence would show that had Mr. Bowls gone to a doctor during the two month period prior to his date of death, the 95 percent occlusion of his left anterior descending coronary artery would in all probability have been discovered and an angioplasty would have been performed. Appellants objected to these statements as irrelevant. The trial court overruled that objection.

Respondents next began to describe the events of the morning of July 17, 1986:

> That morning Bobbie Bowls had gone to the unemployment office about 9:00 o'clock. He'd also smoked marijuana that day sometime before he'd gone, either before or just—or after he went to the unemployment office. And his car needed to be towed because he had a problem with the car breaking down on him at the unemployment office.... Facts are that—and will be testified to by Rhonda Bowls—that her husband was in the tow truck and he had—he was having sharp chest pains. Now he hadn't done anything that day except whatever he did with regard to his substance abuse.

Appellants objected to the substance abuse comment and moved for a mistrial. The trial court sustained the objection on the grounds that it was argumentative but denied the motion for mistrial. The trial court also denied a motion to strike. The court stated that when evidence of the marijuana usage arose during trial, it would instruct the jury that there was no causal relationship between marijuana usage and Mr. Bowls' heart condition and that the jury was only to consider the marijuana usage in assessing damages.

Appellants also complain about Respondents' comments during opening argument pointing out that when Mr. Bowls started having chest pains, neither Mr. or Mrs.

**1.** The parties disputed what the original *in limine* order actually covered. Unfortunately, the court's original order was not included in the record. We, therefore, defer to the trial court's comments on the record regarding its recollection of the order. *French v. Missouri Highway & Transp. Comm'n*, 908 S.W.2d 146, 151 (Mo.App. W.D.1995).

Bowls called 911, but instead Mrs. Bowls attempted to contact Dr. Gruenebaum.

When Respondents' opening statements were resumed on the second day of trial, the trial court informed counsel that it had made a mistake by allowing Respondents' to comment on the fact that Mr. Bowls had not gone to a doctor in the two months prior to July 17, 1986, because it did not constitute a comparative fault situation. The court stated:

> I don't think it's relevant. I don't think it goes to prove any issue in the case, number one. Number two, I think it muddies the water and leaves the jury to speculate as to what might have happened had he gone into the doctor. I think there's a real problem with this and I could kick myself for letting you do that yesterday.

The court offered to give the jury a cautionary instruction to disregard any comment made in opening argument regarding Mr. Bowls' failure to seek medical assistance for chest pains prior to July 17, 1986. Appellant agreed to the cautionary instruction.

The primary thrust of Appellant's first point claims that "the trial court's self-admitted original error in allowing extensive commentary in [Respondent]'s opening statement attributing comparative fault to Mr. Bowls planted a seed which no curative instruction could eradicate. . . ." Appellants claim that mistrial was the only appropriate remedy.

■ "A mistrial is the most drastic remedy for trial error and 'should be granted only where the incident is so grievous that the prejudicial effect can be removed no other way.'" *Philmon v. Baum*, 865 S.W.2d 771, 779 (Mo.App. W.D.1993) (quoting *Herndon v. Albert*, 713 S.W.2d 46, 48 (Mo.App. E.D.1986)). The trial court is in a better position than a reviewing court to assess the prejudicial effect, if any, of an allegedly improper comment in opening statement, and is vested with considerable discretion in determining what corrective action is required. *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 229 (Mo.App. S.D.1990) (en banc) (citing *Martin v. Sloan*, 377 S.W.2d 252, 259–

60 (Mo. banc 1964)). A trial court's decision denying a motion for mistrial because of improper remarks during opening statement will not be disturbed on appeal unless the trial court clearly abused its discretion. *Id.*

■ In this case, the trial court sustained Appellants' objection to the substance abuse comment and later gave a curative instruction indicating that there was no causal relationship between Mr. Bowls' marijuana use and his heart attack. The trial court was well within its discretion in finding this remedy adequate.

■ With regard to the comments about Mr. Bowls' failure to seek medical help sooner, the court recognized the mistake made and offered to give a curative instruction. Appellants accepted the offer and made no request for additional relief. Appellants did not renew the previous day's request for a mistrial. "[B]y failing to move for a mistrial at the time the trial court sustained [Appellants'] objection during [Respondents'] opening statement, [Appellants] failed to preserve for appellate review any contention that the trial court erred in failing to declare a mistrial." *Dunn v. Wal-Mart Stores, Inc.*, 909 S.W.2d 728, 731 (Mo.App. S.D.1995). Under the circumstances of this case, the trial court did not abuse its discretion in finding the corrective instructions were adequate to remedy any prejudice caused by Respondents' opening statements.

■ Appellants also claim that some evidence indicating comparative fault was improperly admitted during trial, however, the only evidence specifically referenced by Appellants, testimony by Mrs. Bowls that she called Dr. Gruenebaum rather than 911, was not objected to during trial. Appellants' failure to object to testimony elicited at trial waives any complaint they might have on appeal. *Lindsey Masonry Co. v. Jenkins & Assoc.*, 897 S.W.2d 6, 18 (Mo.App. W.D.1995). Moreover, the testimony complained of was relevant to establishing the reasonableness of Dr. Scarborough's attempts to contact Dr. Gruenebaum.[2]

---

**2.** The only evidence specifically referenced by Appellants relates to Respondents' questioning of

Mrs. Bowls about the fact that she called Dr. Gruenebaum rather than 911 when her husband

Appellants' only complaint about closing argument relates to the following exchanges:

Defense Counsel: And you know, they talk about delay, they talk about delay. But you know, here he is for several months and he's—and he's got this and he's got all these chest pains. And you remember when plaintiffs' counsel read to you that he hadn't been to see Dr. Gruenebaum ever, but his wife testified—

The trial court sustained an objection to this statement, denied Appellants' motion for mistrial, and instructed the jury to disregard the last comment. The court then allowed Respondents to state that Mr. Bowls had chest pain for several months, and during that time, his wife had urged him to see Dr. Gruenebaum. The court stated that it was allowing this comment because Mrs. Bowls had specifically testified to those facts.[3]

Counsel is traditionally given wide latitude to suggest inferences from the evidence on closing argument. *Moore v. Missouri Pacific R. Co.*, 825 S.W.2d 839, 844 (Mo. banc 1992). The trial court is accorded broad discretion in ruling on the propriety of a closing argument and will suffer reversal only for an abuse of discretion. *Id.* "This is so 'even though the inferences drawn are illogical or erroneous.'" *Id.* (quoting *Eickmann v. St. Louis Pub. Serv. Co.*, 323 S.W.2d 802, 810 (Mo.1959)). "The trial court has sound discretion in determining whether closing argument has had a prejudicial effect so as to warrant a mistrial, and its judgment will not be disturbed on appeal unless there is a manifest abuse of discretion." *Amador v. Lea's Auto Sales & Leasing, Inc.*, 916 S.W.2d 845, 851 (Mo.App. S.D.1996) (citing *Richardson v. State Highway & Transp. Comm'n*, 863 S.W.2d 876, 881 (Mo. banc 1993)).

We find no abuse of discretion here. Respondents' comments during closing argu-

ment relating to Mr. Bowls' delay in seeking treatment were fleeting and were merely a reiteration of the facts testified to by Mrs. Bowls. Nor do we find that the cumulative effect of the trial court's rulings mandated the declaration of a mistrial. Moreover, no instruction was given that would allow the jury to consider the comparative fault of Mr. and Mrs. Bowls. The jurors were instructed that they must find for Appellants if they believed that Dr. Scarborough failed to timely diagnose a heart attack or that she failed to timely request a consult from a cardiologist for a patient suspected of having a heart attack, that she was thereby negligent, and that such negligence caused or directly contributed to the death of Mr. Bowls. The jury returned a verdict finding for the Respondents. The jury necessarily must have concluded that the Appellants failed to establish at least one of the elements necessary to return a verdict in their favor. Because the jury found no liability on the part of the Respondents and returned a general verdict in their favor, it never reached the question of apportionment of fault, and no prejudice could have resulted to the Appellants. *Long v. Twehous Contractors, Inc.*, 904 S.W.2d 285, 288 (Mo.App. W.D.1995) (error in submitting comparative fault to a jury is rendered harmless when the jury attributes no fault to the defendant); *Lee v. Mirbaha*, 722 S.W.2d 80, 84 (Mo. banc 1986); *See also Hawk v. Union Elec. Co.*, 798 S.W.2d 173, 175 (Mo.App. E.D.1990) (erroneous comparative fact instruction cannot be prejudicial where the jury entered a general verdict finding no fault by defendants for plaintiff's injuries). Point denied.

In their second point, Appellants contend that the trial court erred in denying their *Batson* challenge to the Respondents' peremptory strike of Wayne Wilson, an African-American venireperson.[4] Within this

---

told her about his chest pains. This evidence was relevant to establishing the reasonableness of Dr. Scarborough's understanding that Dr. Gruenebaum's approval was necessary for further medical treatment.

**3.** Appellants made a point of eliciting testimony from Mrs. Bowls in direct examination that Mr. Bowls had never gone in to see Dr. Gruenebaum.

**4.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), was extended to apply to civil litigants in *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), in which the United States Supreme Court held that a litigant in a civil case may not use peremptory challenges to exclude a juror solely because of race. *Perkins v. Runyan*

point, Appellants make two distinctly different arguments.

■ Appellants' primary claim is that "the trial court failed to hold an evidentiary hearing on their *Batson* challenge as mandated by *State v. Parker.*" Once a party properly raises a *Batson* challenge, the trial court is required to conduct an evidentiary hearing to determine whether the attorney's strike was racially motivated. *State v. Parker,* 836 S.W.2d 930, 940 (Mo. banc 1992). According to Appellants, "the record is clear that no such hearing was held in this case." Appellants apparently contend that because the trial court did not adjourn all proceedings and schedule a separate "evidentiary hearing" for a future time, that the evidentiary hearing requirement was not met. This procedural claim of error is raised for the first time on appeal and, therefore, is not preserved for appeal. *State v. Lawson,* 876 S.W.2d 770, 778 (Mo.App. S.D.1994).

■ Even assuming, *arguendo,* that this claim was properly preserved, Appellants' argument is devoid of merit. *Parker* clearly set forth the procedure to be followed by the trial court when confronted with a defendant's timely *Batson* objection:

> First, the [complaining party] must raise a *Batson* challenge with regard to one or more specific venirepersons struck by [opposing counsel] and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the [striking counsel] is able to articulate an acceptable reason for the strike, the [complaining party] will then need to show that [striking counsel]'s proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*Parker,* 836 S.W.2d at 939 (citations omitted). "*Parker* remains the definitive statement of Missouri procedure in *Batson* cases." *House v. Missouri Pacific R.R.,* 927 S.W.2d 538, 541 (Mo.App. E.D.1996).

■ The trial court followed the procedure set out in *Parker* to the letter. Following *voir dire,* Appellants raised a *Batson* claim regarding the Respondents' peremptory strike of Wilson. The trial court then required Respondents to provide an explanation for their strike. Respondents stated that they were striking Wilson because he used marijuana despite being a youth worker at the Jackson County Youth Detention Center and, therefore, might be disinclined to give weight to their evidence that Mr. Bowls was a bad role model for his children. Respondents further voiced their concern that, as a youth worker, Wilson was likely exposed to many bad family situations which might make him prone to award more in the way of damages. Finally, the Respondents claimed they felt that as a youth worker Wilson was likely a minimum wage earner who would be more liberal in giving away money and might place a higher burden of proof on Dr. Scarborough because of her educational level. Appellants were then afforded the opportunity to show that these reasons were merely pretextual and that the strikes were actually racially motivated. After considering the parties' arguments, the trial court found that Wilson was struck for non-discriminatory reasons. This evidentiary hearing held by the trial court met all the requirements of *Parker. State v. Parker,* 836 S.W.2d 930, 940 (Mo. banc 1992).

Appellants also claim that the trial court erred in finding Respondents' reasons for striking Wilson were not pretextual. Appellants contend that because nothing in the record indicates exactly what Wilson's salary was, Respondents' assumption that he was a minimum wage earner must have been based on a racial stereotype.

■ "Because of the extensive role of the trial court and because the findings of fact turn largely on an evaluation of credibility, a reviewing court must give great deference to those findings." *State v. Mack,* 903 S.W.2d 623, 629 (Mo.App. W.D.1995). Our review of a *Batson* challenge is, therefore, limited to determining whether the finding is clearly erroneous. *State v. Shackelford,* 861

S.W.2d 733, 735 (Mo.App. E.D.1993).[5]

■ Respondents' reasons for their peremptory strike need not be persuasive or even plausible. *Perkins v. Runyan Heating & Cooling Servs.*, 933 S.W.2d 837, 840 (Mo. App. W.D.1996). "The reason offered by the [Respondents] will be deemed race neutral unless some discriminatory intent is inherent in the explanation given." *Id.* We find nothing inherently discriminatory about Respondents' assumption that a youth worker employed at the Jackson County Youth Detention Center earns a low wage. *See Perkins*, 933 S.W.2d at 840 (striking a man because he was unemployed was raceneutral reason). Moreover, in evaluating the Respondents' motive for striking Wilson, the trial court was entitled to consider the fact that Respondents made no effort to strike the two other African–Americans in the venire panel and to take into account the fact that Dr. Scarborough, Mr. Bowls, and Mrs. Bowls were all African–American. *State v. Davis*, 894 S.W.2d 703, 711 (Mo.App. W.D. 1995). Once Respondents articulated acceptable reasons for the strike, the burden shifted to Appellants to show that Respondents' proffered reasons for the strike were merely pretextual and that the strikes were racially motivated. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). The trial court was not clearly erroneous in finding that Appellants failed to meet this burden and that Respondents' peremptory strikes were not racially motivated. Point denied.

In their third point, Appellants claim the trial court erred in allowing the Respondents to question Mrs. Bowls about statements she made to Dr. Scarborough following a pretrial deposition. During a subsequent pretrial deposition of Mrs. Bowls, she admitted telling Dr. Scarborough that she really did not want to sue her because she knew Dr. Scarborough had tried to help and to get everything done for Mr. Bowls that she could. Mrs. Bowls also commented that she felt the person responsible for the delay in Mr. Bowls' treatment was Dr. Gruenebaum. Appellants made a motion *in limine* to suppress any evidence of the conversation on the grounds that it was confusing, misleading, and might cause undue prejudice. The trial court denied Appellants' motion, finding the conversation admissible as an admission against interest.

■ Subsequently, on direct examination, Appellants questioned Mrs. Bowls about her conversation with Dr. Scarborough. This interrogation elicited the substance of her comments to Dr. Scarborough and the fact that Mrs. Bowls was not a doctor and knew absolutely nothing about the standard of care for emergency room doctors. During cross-examination, Respondents further questioned Mrs. Bowls about her conversation with Dr. Scarborough. In particular, Respondents asked Mrs. Bowls to recall what she said during her deposition. Appellants objected to the use of her deposition testimony about the conversation as an improper method of impeachment. The trial court denied Appellants' motion, holding that her admissions against interest could be used for any purpose.[6] Defense counsel then proceeded to question Mrs. Bowls with excerpts from her deposition which dealt with her conversation with Dr. Scarborough.

In response to later objections to questions dealing with Mrs. Bowls' deposition testimony, the trial court instructed the jury that Mrs. Bowls' opinions were not expert medical opinions, but were merely opinions based upon what she had observed.

Appellants claim that Mrs. Bowls' comments to Dr. Scarborough were improperly admitted as admissions against interest because Mrs. Bowls had no factual basis for these opinions and that only a medical expert would be qualified to make them. Appellants further claim that the comments were logically and legally irrelevant.

5. "To be clearly erroneous, the reviewing court must have a 'definite and firm conviction that a mistake was made.'" *State v. Aziz*, 861 S.W.2d 803, 805 (Mo.App. E.D.1993).

6. "If the same evidence is available to a party through both live testimony of its party-opponent and admission by its party-opponent from a deposition, the party, as part of its trial tactics and strategy, may properly elect to present the evidence by way of deposition." *United Services of America v. Empire Bank*, 726 S.W.2d 439, 445 (Mo.App. S.D.1987).

▮ After the denial of a motion in limine, a specific objection must be made at the time the evidence discussed in the motion in limine is introduced at trial. *Derossett v. Alton & Southern Ry.*, 850 S.W.2d 109, 111 (Mo.App. E.D.1993). In order to preserve any error in this regard, Appellants were required to await an attempt by Respondents to introduce evidence of the conversation and to object at that time. *Bushong v. Marathon Elec. Mfg. Corp.*, 719 S.W.2d 828, 841 (Mo. App. S.D.1986) (quoting *Peters v. Henshaw*, 640 S.W.2d 197, 201 (Mo.App. W.D.1982)). Appellants chose, during their direct examination of Mrs. Bowls, to introduce testimony about her conversation with Dr. Scarborough and to attempt to explain the context in which those statements were made. "A party who has introduced evidence concerning a certain fact may not on appeal complain that his opponent was allowed to introduce related evidence, in rebuttal or explanation." *Id.*

▮ Moreover, admissions of a party are not inadmissible merely because they constitute expressions of opinion. *Cummings v. Tepsco Tennessee Pipe & Supply Corp.*, 632 S.W.2d 498, 501 (Mo.App. E.D. 1982).[7] Opinion testimony may be appropriately admitted so long as it is based on matters not beyond the scope of the personal knowledge and understanding of the declarant. *Id.* Given the context in which direct examination set Mrs. Bowls' comments and the wording of Respondents' initial questions, the clear implication of Mrs. Bowls' testimony was that her opinions were based solely on her own observations of Dr. Scarborough's behavior and demeanor and were not medical opinions.[8] The trial court did not err in overruling Appellants' objection based on Mrs. Bowls' lack of medical qualifications or personal knowledge. *See Koontz v. Ferber*, 870 S.W.2d 885, 893 (Mo.App. W.D.1993) (hearsay statements by father concerning a child's previous health problems or lack

thereof was a statement concerning observable symptoms, not a statement of medical opinion). Point denied.

In their fourth point, Appellants claim the trial court erred in submitting instructions 17 and 18, which were tendered by Respondents and submitted for the issue of the comparative fault of Dr. Eynon and Dr. Gruenebaum. They argue that those instructions were not supported by the evidence.

▮ We need not address the issue of whether the comparative fault instructions were supported by the evidence and properly submitted to the jury. Instructional error is not prejudicial if the jury never reaches the point in question. *Riley v. Union Pacific R.R.*, 904 S.W.2d 437, 444 (Mo.App. W.D. 1995). Under Missouri's comparative negligence doctrine, "any error in giving comparative fault instruction is harmless if the jury finds no negligence on the part of the defendant." *Id.* (quoting *Duren v. Kunkel*, 849 S.W.2d 145, 147 (Mo.App. W.D.1993)). In the case at bar, the jury found no negligence on the part of Dr. Scarborough, and therefore, any error in the submission of the comparative negligence instructions was harmless. Point denied.

In their fifth point, Appellants contend the trial court erroneously allowed Mrs. Bowls to be questioned about statements made by Dr. Eynon. Appellants claim that, although none of the questions were answered and their objections to Respondents' questions were sustained, "the trial court failed to exercise adequate control over defense counsel's examination."

▮ The trial court is afforded broad discretion in the control of cross-examination. *Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 143 (Mo.App. E.D. 1989). Generally, when an improper ques-

---

7. Evidence may be admitted as an admission of a party-opponent if the following elements are present:
 (1) A conscious or voluntary acknowledgement by a party-opponent of the existence of certain facts,
 (2) the matter acknowledged must be relevant to the cause of the party offering the admission, and

(3) the matter acknowledged must be unfavorable to, or inconsistent with the position now taken by the party-opponent.
*In re Estate of Daly*, 907 S.W.2d 200, 205 (Mo. App. W.D.1995).

8. The trial court's instruction shortly thereafter further drove that point home.

tion is asked but not answered, no prejudicial error results. *State v. Gilmore*, 681 S.W.2d 934, 942 (Mo. banc 1984). "In those situations in which the question alone may, in the opinion of counsel, create an unfavorable consequence, counsel may ask for further relief." *State v. McClanahan*, WD 51634, Slip op. at 3,— S.W.2d ——, ——, WL 523927 (Mo. App.W.D. March 25, 1997). In this case, the trial court sustained all of Appellants' objections and instructed the jury that the questions and comments of attorneys were not evidence. Appellants made no request for further relief. When a party's objection to a question is sustained and no further relief is requested, nothing is preserved on appeal. *Id. See also Hannibal Sales Co. v. Solter*, 551 S.W.2d 936, 939 (Mo.App. E.D.1977) (no prejudice where counsel receives the relief requested following improper questions). Point denied.

In their sixth point, Appellants argue that Respondents were improperly allowed to read portions of Dr. Scarborough's deposition testimony into evidence. During their case in chief, Appellants read selected portions of Dr. Scarborough's deposition into evidence. While admitting that Respondents were entitled to read some of the omitted portions of Dr. Scarborough's deposition in order to explain her testimony and place it in context, Appellants claim that Respondents were allowed go beyond rehabilitation and present testimony which merely buttressed Dr. Scarborough's trial testimony.

 Appellants do not identify, either in their point relied on or in the argument portion of their brief, what action or ruling of the trial court they seek to have reviewed or which specific portions of the deposition testimony read by Respondents caused offense. Instead they simply rely on a sweeping statement that the readings went too far and direct this court to "see generally" the thirty pages of transcript in which Respondents made use of the deposition testimony.

Rule 84.04(d) requires that points relied on "state briefly and concisely what actions or rulings of the court are sought to be re-

viewed and wherein and why they are claimed to be erroneous." *Nash v. Ozark Barbeque, Inc.*, 901 S.W.2d 353, 356 (Mo.App. S.D.1995). Rule 84.04(d) further provides that "[s]etting out only abstract statements of law without showing how they are related to any action or ruling of the court is not in compliance with this Rule." *Dickinson v. Ronwin*, 935 S.W.2d 358, 365–66 (Mo.App. S.D.1996). Rule 84.04(h) provides that "[a]ll statements of fact and argument shall have *specific* page references to the legal file or the transcript.'" *Nash*, 901 S.W.2d at 355 (emphasis added).[9] Appellants failed to comply with either of these provisions of Rule 84.04.

 Where a party fails to comply with Rule 84.04, they present nothing for appellate review. *Jones v. Jones*, 937 S.W.2d 352, 357 (Mo.App. S.D.1996). "A bare allegation that the trial court erred in permitting certain testimony is inadequate, not only because it fails to identify the offending ruling but also because it fails to indicate that the complaining party timely and adequately opposed the ruling at trial." *Eagleburger v. Emerson Elec. Co.*, 794 S.W.2d 210, 221 (Mo. App. S.D. banc 1990) (citing *Thummel v. King*, 570 S.W.2d 679, 685 (Mo. banc 1978)).

 Regarding Appellant's failure to specifically cite to the transcript, "[i]t is not the duty of an appellate court to seine the record in order to discover, if possible, error by the trial court; it is the duty of an appellant to distinctly point out the alleged errors and where they can be found in the record." *Eagleburger*, 794 S.W.2d at 240.

 Furthermore, the trial court is afforded broad discretion in ruling on the use of depositions during trial. *Steenrod v. Klipsch Hauling Co.*, 789 S.W.2d 158, 170 (Mo.App. E.D.1990). As a general rule, once one party reads a portion of a deposition, the opposition may read some or all of the remainder in explanation. *Nugent v. Owens-Corning Fiberglas, Inc.*, 925 S.W.2d 925, 929

---

9. While our comments directly relate to Appellants' brief, we observe that Appellants and Respondents are equally guilty of failing to comply with Rule 84.04(h) regarding page references to the transcript in the argument sections of their briefs. This breach of the Rules relating to appellate practice is particularly onerous in light of the fact that the transcript covers 2,563 pages.

(Mo.App. E.D.1996).[10] Having reviewed the transcript *ex gratia,* we find no abuse of discretion on the part of the trial court. Point denied.

In their final point, Appellants claim that the cumulative effect of the trial court's errors warrants reversal even if the errors, considered individually, do not. In five of the Appellants six arguments, we found no error on the part of the trial court. While not addressing whether the trial court erred in submitting instructions 17 and 18, we found that such error would have been harmless. The trial court committed no errors warranting reversal. *See Perkins v. Runyan Heating & Cooling Servs.,* 933 S.W.2d 837, 843 (Mo.App. W.D.1996). Point denied.

The judgment is affirmed.

All concur.

---

**10.** A plaintiff "may not complain of evidence offered by the defendant in rebuttal of plaintiff's own evidence." *Bushong v. Marathon Elec. Mfg. Corp.,* 719 S.W.2d 828, 841 (Mo.App. S.D.1986).