STATE of Missouri, Respondent,

v.

James A. MICKLE, Appellant.

No. WD 61916.

Missouri Court of Appeals,
Western District.

March 29, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 2005.

Application for Transfer Denied
June 21, 2005.

 

Rosalynn Koch, Columbia, MO, for Appellant.

Linda Lemke, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

Before EDWIN H. SMITH, C.J., LOWENSTEIN, BRECKENRIDGE, SPINDEN, SMART, ELLIS, HOWARD, NEWTON, HOLLIGER, HARDWICK, JJ, and MARTIN, SR. J.

EDWIN H. SMITH, Chief Judge.

James Mickle appeals the judgment of his convictions, after a jury trial in the Circuit Court of Vernon County, on Count I, of attempted manufacture of methamphetamine, § 195.211;[1] on Count II, of possession of ephedrine with intent to manufacture methamphetamine, § 195.246; and, on Count III, of possession of drug paraphernalia with intent to use to manufacture methamphetamine, § 195.233. As a result of his convictions, the appellant was sentenced, as a prior drug offender, § 195.275, to consecutive terms in the Missouri Department of Corrections of ten years on Count I, five years on Count II, and five years on Count III.

The appellant raises four points on appeal. In Point I, he claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence, as to Counts I, II and III, because it failed to make a submissible case as to each in that the evidence did not demonstrate, as required to convict, that he possessed, as alleged in the information, the meth-related items seized from his vehicle at the time of his arrest. In Point II, he claims that the trial court "erred in overruling [his] motion in limine and allowing the [S]tate to elicit from Rosalee Woods that [he] had used methamphetamine frequently," because such evidence constituted inadmissible evidence of uncharged crimes. In Point III, the appellant claims that the trial court plainly erred in failing to exclude, *sua sponte,* the testimony of Woods that the appellant refused to consent to a search of his vehicle and failing to prohibit the State from arguing the same in closing argument because it violated his Fourth Amendment right to be free from unreasonable searches and seizures. In Point IV, he claims that the trial court plainly erred in giving Instructions No. 7 and 9, the State's verdict directors as to Counts II and III, because they did not conform to MAI–CR 3d 325.32 and MAI–CR 3d 325.22, the mandatory MAI–CR instructions for submitting those offenses.

We affirm.

### Facts

On January 17, 2002, the appellant was charged, in the State's second amended information, as a prior drug offender, § 195.275, with attempted manufacture of methamphetamine, § 195.211; possession of ephedrine with intent to manufacture methamphetamine, § 195.246; and possession of drug paraphernalia with intent to

**1.** All statutory references are to RSMo 2000, unless otherwise indicated.

use to manufacture methamphetamine, § 195.233.

The charges against the appellant arose from events occurring on August 25, 2000. On that date, the appellant and Rosalee Woods, while returning home to Kansas following a three-day trip to Monnett, Missouri, came to a sobriety checkpoint on Highway 54, which was being conducted by the Missouri State Highway Patrol. Before reaching the checkpoint, Woods, who was driving, pulled the vehicle over to the shoulder of the road and opened the driver's side door. Trooper Brad Bearden immediately approached the vehicle, as he was the "chase car officer" on duty, meaning his assignment was to pursue vehicles that might attempt to elude the checkpoint. Initially, Trooper Bearden engaged Woods, as she was the driver of the vehicle. However, Trooper Bearden's attention quickly turned to the appellant, who was in the front passenger seat, as he began to reach down between his seat and the door. Fearing that the appellant was reaching for a weapon, Trooper Bearden quickly ordered the appellant to exit the vehicle, and, in doing so, noticed a bag of plastic syringes at the appellant's feet. He also noticed a chemical odor emanating from the vehicle's interior.

Due to his suspicions concerning the syringes and the chemical odor, Trooper Bearden called for assistance, with Trooper Roger Renken responding. Upon Trooper Renken's arrival, a search of the appellant's vehicle was conducted. The vehicle was a red Chevrolet Camaro, which is a mid-size sports coupe/hatchback.

During the search, the troopers found, in the backseat of the vehicle, a plastic Wal–Mart bag containing drain cleaner, four cans of starting fluid, and a jar of white powdery liquid, which later tested positive for pseudoephedrine. They also found a large cooler containing 83.94 grams of powdered pseudoephedrine, a spatula, a beer can, and a black leather bag containing 17.89 grams of powdered pseudoephedrine, scales, small plastic baggies, mason lids, silicone gel, another spatula, rubber gloves, paper plates, coffee filters, vice grips, wire cutters, a can opener, a spoon, alcohol cleansing pads, a clear glass vial, a thermos, and lithium cores that had been stripped from batteries. In addition, they found an ice cream bucket containing a bottle of salt, a length of tubing with a two liter bottle attached, and black tape. Among these items, they also found a plastic Wal–Mart bag containing the appellant's clothes. In the hatchback of the vehicle, they found a rifle case containing a pump-action sawed-off shotgun. Where Trooper Bearden initially saw the appellant reach with his hand, they found a syringe with a bent needle, containing a small amount of cloudy liquid.

The appellant's case proceeded to a jury trial on July 25, 2002. Before *voir dire*, the court took up the appellant's motion *in limine*, filed on July 16, 2002, seeking to exclude any evidence concerning his prior methamphetamine use. The court, however, did not rule on the motion, indicating on its docket sheet: "D'S MOTION IN LIMINE RE: PRIOR OR UNCHARGED CRIMES TAKEN UNDER ADVISEMENT AS TO POSSIBLE REASONS FOR ADMISSABILITY."

At trial, Troopers Bearden and Renken, as well as Matthew Barb, a drug analyst with the Missouri State Highway Patrol, testified on behalf of the State. Among other things, they testified as to the items and ingredients seized from the appellant's vehicle, explaining that these items and ingredients constitute everything one would need to manufacture methamphetamine, except for anhydrous ammonia. The appellant presented testimony from

his ex-wife, Donna Berry, and Woods, who testified that all of the meth-related items seized from the appellant's vehicle belonged to her and that the appellant was unaware of their presence in his vehicle. In rebuttal, the State called Trooper Bearden and Donna Lands, an acquaintance of Woods.

On July 26, 2002, the jury found the appellant guilty of the charged offenses. On September 10, 2002, the trial court denied the appellant's motion for judgment of acquittal or in the alternative, for a new trial, and, on that same date, sentenced the appellant, as a prior drug offender, to consecutive terms in the Missouri Department of Corrections of ten years on Count I, five years on Count II, and five years on Count III.

This appeal followed.

## I.

In Point I, the appellant claims that the trial court erred in overruling his motions for judgment of acquittal at the close of the State's and all the evidence, as to Counts I, II and III, because it failed to make a submissible case as to each in that the evidence did not demonstrate, as required to convict, that he possessed, as alleged in the information, the meth-related items seized from his vehicle at the time of his arrest.

■ Our standard of review, as to a claim of insufficiency of the evidence to convict, is set forth in State v. Johnson, 62 S.W.3d 61, 69–70 (Mo.App.2001) (quoting State v. O'Brien, 857 S.W.2d 212, 215–16 (Mo. banc 1993)):

A challenge to the sufficiency of the evidence to support a finding of guilt is based in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. No person may be deprived of liberty, 'except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt.' The constitutional sufficiency of the evidence is a question of law to be determined, in the first instance, by the trial court on proper motion by the defendant and again on appeal.

When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the 'submissibility' of the case. Therefore, any guilty verdict subsequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. To ensure that the reviewing court does not engage in futile attempts to weigh the evidence or judge the witnesses' credibility, courts employ 'a legal conclusion that upon judicial review all of the evidence is to be considered in the light most favorable to the prosecution.' Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored.

For clarity's sake, we will address each count separately to determine the sufficiency of the evidence to convict thereon.

### Count I—Attempt to Manufacture, § 195.211

■ In Count I, the appellant was charged with attempted manufacture of methamphetamine, under § 195.211.1,

which reads: "[I]t is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance or to possess with intent to distribute, deliver, manufacture, or produce a controlled substance." In charging the appellant with attempting to manufacture methamphetamine, the State alleged that he:

> possessed pseudoephedrine, starting fluid, muratic acid, salt, an acid generator, lithium battery strips, plastic bags, tools, coffee filters, a spoon, syringes, a thermos-like container, jars and scales, and such conduct was a substantial step toward the commission of the crime of manufacture of methamphetamine, a controlled substance, and was done for the purpose of committing such offense of manufacturing a controlled substance.

The State, in charging the appellant with an "attempt" to manufacture methamphetamine, did not expressly reference, in its second amended information, § 564.011. Nonetheless, that section is applicable to the offense of an attempt to manufacture methamphetamine, in violation of § 195.211. *State v. Withrow,* 8 S.W.3d 75, 79 (Mo. *banc* 1999); *State v. Farris,* 125 S.W.3d 382, 387 (Mo.App.2004); and *State v. White,* 14 S.W.3d 121, 124 (Mo.App. 2000). Section 564.011.1 provides:

> A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A **"substantial step"** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

■ To convict the appellant of the offense of an attempt to manufacture methamphetamine, as charged, the State had the burden of proving that he, with the purpose of manufacturing methamphetamine, did any act that was a substantial step toward the commission of that offense. *State v. Metz,* 43 S.W.3d 374, 378 (Mo.App.2001). Like in *Withrow, Farris,* and *Metz,* the State's theory of Count I, an attempt to manufacture methamphetamine, was that the appellant possessed various items that are commonly known to be used in the manufacture of methamphetamine, specifically the items listed in the information.

■ The appellant contends that the evidence was insufficient for the jury to find that he possessed the meth-related items, as alleged in the second amended information, such that it failed to prove that he had taken a substantial step toward the commission of the underlying offense of manufacturing methamphetamine. In determining whether the evidence was sufficient in that respect, we apply the same standard of possession used in possession cases. *State v. Farris,* 125 S.W.3d at 387. Possession of a controlled substance is defined in § 195.010(34), which reads:

> 'Possessed' or 'possessing a controlled substance', a person, with the knowledge of the presence and nature of a substance, has actual or constructive possession of the substance. A person has actual possession if he has the substance on his person or within easy reach and convenient control. A person who, although not in actual possession, has the power and the intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance possession is sole. If two or more persons share possession of a substance, possession is joint[.]

It is well settled that possession may be proven by circumstantial evidence. *State v. Villaneuva*, 147 S.W.3d 126, 129 (Mo. App.2004) (citing *State v. Purlee*, 839 S.W.2d 584, 587 (Mo. *banc* 1992)). The record, here, reveals that there was sufficient circumstantial evidence from which the jury could have reasonably inferred that the appellant, as charged, was, at the very least, in constructive possession of the meth-related items seized from his vehicle at the time of his arrest.

■ In *State v. Withrow*, the Missouri Supreme Court set forth the standard for determining whether the evidence is sufficient to find that a defendant is in constructive possession of items and ingredients used in the manufacture of methamphetamine to convict him of an attempt to manufacture methamphetamine, under § 195.211:

> If actual possession is not present, ... constructive possession of the drugs or the drug components and apparatus will satisfy this burden if other facts exist which buttress the inference of the defendant's requisite mental state. *State v. Condict*, 952 S.W.2d 784, 786 (Mo. App.1997); see also sec. 195.010(33) (defining the terms actual and constructive possession under the Narcotic Drug Act). Constructive possession requires, at a minimum, evidence that the defendant had access to and control over the premises where the materials were found. *State v. Purlee*, 839 S.W.2d 584, 588 (Mo. banc 1992). Exclusive possession of the premises containing the materials raises an inference of possession and control. *Id.* When the accused shares control over the premises, ... further evidence is needed to connect him to the manufacturing process. *Id.* The mere fact that a defendant is present on the premises where the manufacturing process is occurring does not by itself make a submissible case. *State v.*

*Barber*, 635 S.W.2d 342, 344–45 (Mo. 1982). Moreover, proximity to the contraband alone fails to prove ownership. *State v. Bowyer*, 693 S.W.2d 845, 847 (Mo.App.1985). There must be some incriminating evidence implying that the defendant knew of the presence of the manufacturing process, and that the materials or the manufacturing process were under his control. *Purlee*, 839 S.W.2d at 588.

8 S.W.3d at 80.

■ In cases involving joint control of an automobile, as here, a defendant is deemed to have both knowledge and control of items discovered within the automobile, and, therefore, possession in the legal sense, where there is additional evidence connecting him with the items. *State v. Johnson*, 81 S.W.3d 212, 215 (Mo.App. 2002). As we explained in *State v. Smith*, 33 S.W.3d 648, 653 (Mo.App.2000):

> Where a person is present on premises where drugs are found but does not have exclusive use or possession of the premises, it may not be inferred that he had knowledge of the presence of the drugs or had control, so that no submissible case is made. Additional factors are required. When the defendant is present on the premises and if there are additional independent factors showing his knowledge and control, then that is sufficient to withstand a motion for directed verdict. To justify a conviction in any case of possession it is necessary to prove that the accused knew of the presence of the forbidden substance and that the same was under his control. In the absence of incriminating circumstances no case is made.

Additional incriminating circumstances that will support an inference of knowledge and control include, *inter alia*: (1) being in close proximity to the item seized,

*Farris,* 125 S.W.3d at 388; (2) presence of a chemical odor associated with the manufacture of methamphetamine, *Id.; Booth,* 11 S.W.3d at 892; (3) giving false statements to police, *Farris,* 125 S.W.3d at 388; (4) defendant's personal belongings found with the items or substance, *Purlee,* 839 S.W.2d at 588–89 (Mo. *banc* 1992); *State v. Sours,* 946 S.W.2d 747, 752 (Mo.App.1997); (5) routine access to the place where the item is found, *Booth,* 11 S.W.3d at 892; *Smith,* 33 S.W.3d at 653; and (6) the presence of a gun, *Purlee,* 839 S.W.2d at 589. In determining whether the State has shown sufficient additional incriminating circumstances to support an inference of knowledge and control to establish possession of the seized meth-related items, we look at the totality of the circumstances. *Farris,* 125 S.W.3d at 388.

In *Farris,* the appellant was convicted of attempting to manufacture methamphetamine, § 195.211, based on his possession of numerous meth-related items. *Id.* at 386. The appellant was a passenger, along with another man, in a vehicle being driven by yet a third man. *Id.* at 385–86. After the vehicle was stopped for a traffic violation, the police discovered various meth-related items in the vehicle's trunk and scattered along the roadside near the vehicle and at an intersection where the vehicle had been seen shortly before being stopped. *Id.* at 386. In addition, the police noticed a strong odor of ether emanating from the vehicle. When asked what they were doing, all three men stated that they were driving around and drinking beer. *Id.*

On appeal, the appellant claimed that the State did not make a submissible case in that it "failed to present sufficient evidence that would allow the jury to infer that he either actually or constructively possessed any of the items used to manufacture methamphetamine, which were found in and around the car in which he was riding." *Id.* at 387. In finding that the evidence was sufficient to find possession, this court held that there were additional incriminating factors from which a reasonable jury could infer the defendant's knowledge and control of the meth-related items sufficient to establish possession. *Id.* at 388–89. Specifically, we held that because there was evidence that: (1) the defendant was in close proximity to the meth-related items; (2) the vehicle in which he was a passenger was emanating a chemical odor associated with the manufacture of methamphetamine; and (3) he gave false statements to the police evincing consciousness of guilt, "there was sufficient incriminating evidence to find that [the defendant] had constructive possession of the materials used to manufacture methamphetamine found along the roadway, near the intersection, and in the trunk, and he was aware of the presence and nature of their use." *Id.*

Here, Trooper Bearden testified that he found the following items in the appellant's vehicle at the time of his arrest, which were seized: drain cleaner, four cans of starting fluid, two spatulas, a beer can, scales, small plastic baggies, mason lids, silicone gel, rubber gloves, paper plates, a bottle of salt, black tape, coffee filters, vice grips, wire cutters, a can opener, a spoon, alcohol cleansing pads, a clear glass vial, a thermos, a length of tubing with a two liter bottle attached to it, lithium cores that had been stripped from batteries, and a total of 101.83 grams of pseudoephedrine. Trooper Renken testified that all these items were commonly associated with the manufacture of methamphetamine, using the anhydrous method, and that among the items seized, all the ingredients necessary to manufacture methamphetamine were present, except anhydrous ammonia, and that all the necessary equipment was present as well. In addition, all of the pseu-

doephedrine seized from the appellant's vehicle had already been crushed into powder form and a jar of white powdery liquid, which later tested positive for pseudoephedrine, was seized from the appellant's vehicle, both of which indicate that the manufacturing process had already commenced.

All the items found and seized, other than the syringes and the shotgun, were discovered by Trooper Bearden in plastic bags and containers located in the backseat of the appellant's vehicle. The bags and containers were in plain view and within the appellant's reach. They were not buried, as Woods testified, to hide them from the appellant. Trooper Bearden testified that there was a chemical odor, which he associated with the manufacture of methamphetamine, emanating from the vehicle. He also testified that the personal belongings of the appellant were found in a plastic Wal–Mart shopping bag identical to the bags in which some of the meth-related items were found. As to the appellant's routine access to the vehicle, including the backseat where the meth-related items were found, the evidence was that he was not only a passenger, who had been traveling with Woods in the vehicle for the past three days, but that he owned the vehicle. As an owner and passenger, the appellant certainly had routine access to the backseat, and this fact is not destroyed by the fact that Woods would also have had access. *Booth*, 11 S.W.3d at 892. There was also evidence that a case, which was in plain view and contained a pump-action sawed-off shotgun, was found in the hatchback of the vehicle, from which "[t]he jury could have inferred that the weapon was intended to protect the [vehicle's] valuable cargo during the long trip . . ., buttressing the inference that [the defendant] was in conscious, knowing possession of the [meth-related items and ingredients]." *Purlee*, 839 S.W.2d at 589.

In addition to all the other items that were seized, Trooper Bearden testified that a plastic bag of syringes was found at the appellant's feet and that a syringe with a bent needle containing a cloudy fluid was found under his seat where he had observed him earlier placing his hand. There is evidence that the appellant lied about whose syringes they were. When asked about the syringes, the appellant told Trooper Bearden that they belonged to someone named Dondra, while Woods told the trooper that they belonged to someone named Rhonda. At trial, however, Woods testified that the syringes must have belonged to Donna Lands because she was diabetic and had recently been in the vehicle. However, Lands testified that she barely knew Woods or the appellant, and that she had never been in the appellant's vehicle. The syringes, those in the bag and the one under the seat, were in easy reach and control of the appellant. In fact, the jury could have inferred that he placed the syringe with the cloudy substance under his seat to avoid being found with it, evincing consciousness of guilt. In addition, the jury could have inferred that both the appellant and Woods lied about the syringes for the same reason. The evidence was more than ample for the jury to conclude that the appellant, at a minimum, had constructive possession of the syringes. The appellant's possession of the syringes, which can be used to inject illicit drugs in liquid form, such as methamphetamine, is evidence that would tend to connect the appellant to the meth-related items found in the backseat of his vehicle, even though he was jointly occupying the vehicle with Woods. *State v. Tilley*, 104 S.W.3d 814, 821 (Mo.App.2003); *State v. Camerer*, 29 S.W.3d 422, 426 (Mo.App. 2000).

Given the evidence of the additional incriminating factors and disregarding all evidence and inferences to the contrary, *State v. Johnson,* 62 S.W.3d at 70, we find that there was sufficient evidence from which a reasonable jury could conclude that the appellant had constructive possession [2] of all the meth-related items seized from his vehicle, which are commonly used to manufacture methamphetamine, and was aware of the presence and nature of their use. Hence, the evidence was sufficient for the jury to conclude that the appellant had committed a substantial step toward the commission of the underlying offense of manufacturing methamphetamine, and, therefore, his claim in Point I as to the sufficiency of the evidence to convict him on Count I is without merit.

### Count II—Possession of Ephedrine with Intent to Manufacture Methamphetamine, § 195.246

In Count II, the appellant was charged with possession of ephedrine with intent to manufacture methamphetamine, pursuant to § 195.246.1, which reads, in pertinent part, that: "It is unlawful for any person to possess any methamphetamine precursor drug with the intent to manufacture amphetamine, methamphetamine or any of their analogs." In charging the appellant with possession of ephedrine with intent to manufacture methamphetamine, the State alleged that he, "with intent to manufacture methamphetamine, knowingly possessed ephedrine or pseudoephedrine."

■ To convict the appellant, as charged in Count II, the State was required to prove, beyond a reasonable doubt, that he possessed ephedrine, was aware of its presence, and possessed it with intent to manufacture methamphet-

amine. *White,* 14 S.W.3d at 127. As to the first element, the appellant, in his Point Relied On, challenges the sufficiency of the evidence to show that he had possession of the meth-related items, including the precursor drug pseudoephedrine. However, as we discuss, *supra,* the evidence was sufficient for the jury to infer that the appellant was in constructive possession of all the meth-related items and ingredients found in his vehicle at the time of arrest, including 101.83 grams of pseudoephedrine. Hence, his claim of error in Point I, with respect to Count II, as stated in his Point Relied On, is without merit.

■ Although not included in his Point Relied On, the appellant also challenges in the argument of Point I, the sufficiency of the evidence to show the third proof element of Count II, that he possessed pseudoephedrine "with the intent to manufacture methamphetamine." In that regard, he contends that even if we should conclude that the evidence was sufficient to find that he possessed the meth-related items, as alleged, including the pseudoephedrine, that such evidence was not sufficient for the jury to infer that he intended to manufacture methamphetamine. The failure to include this challenge in his Point Relied On would be a sufficient basis for our refusing to review it. *State v. Dravenstott,* 138 S.W.3d 186, 191 (Mo.App.2004). However, even if we were to review, *ex gratia,* the appellant's challenge as to the sufficiency of the evidence to show an intent to manufacture methamphetamine, it would still fail.

Section 195.246.2 provides that the "[p]ossession of more than twenty-four grams of any methamphetamine precursor drug or combination of methamphetamine

---

**2.** The evidence is such that a good case could be made for the fact that the appellant had actual possession of the meth-related items inasmuch as they were within his reach and control.

precursor drugs shall be prima facie evidence of intent to violate this section." *Prima facie* evidence is evidence that establishes a fact for purposes of submissibility. *State v. Siecke,* 472 S.W.2d 367, 369 (Mo. *banc* 1971) (citations omitted). Ephedrine and pseudoephedrine are classified as methamphetamine precursor drugs. § 195.010.25. Hence, in establishing that the appellant possessed 101.83 grams of pseudoephedrine, the State, by virtue of § 195.246.2, presented evidence that the appellant had the requisite intent to manufacture methamphetamine so as to make a submissible case as to a violation of § 195.246.1, as charged in Count II.

In addition to the State's making a submissible case as to Count II, based on the application of § 195.246.2, a submissible case was also made on the basis discussed as to Count III, *infra.* In either case, the appellant's claim in Point I, as to the sufficiency of the evidence to convict him on Count II, is without merit.

## Count III—Possession of Drug Paraphernalia with Intent to Use to Manufacture Methamphetamine

In Count III, the appellant was charged with possession of drug paraphernalia with intent to use to manufacture methamphetamine, in violation of § 195.233.1, which reads:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance or an imitation con-

trolled substance in violation of sections 195.005 to 195.425.

In charging the appellant with possession of drug paraphernalia with intent to use to manufacture methamphetamine, the State alleged that the appellant:

> possessed cans of starting fluid, muriatic acid, salt, an acid generator, lithium battery strips, plastic bags tools, coffee filters, a spoon, syringes, a thermos-like container, jars and scales, which were drug paraphernalia, knowing of their presence and nature, with intent to use them to manufacture methamphetamine.

■ To convict the appellant, as charged in Count III, the State was required to prove, beyond a reasonable doubt, that he possessed drug paraphernalia, was aware of its presence, and possessed it with intent to use to manufacture a controlled substance. MAI–CR 3d 325.22. As to the first element, possession, the appellant, in his Point Relied On, challenges the sufficiency of the evidence to show that he possessed the meth-related items alleged in Count III, which, in accordance with § 195.010(17),[3] qualify as drug paraphernalia. However, as we discuss, *supra,* as to Count I, the evidence was sufficient for the jury to infer that the appellant was in constructive possession of all the drug paraphernalia found in his vehicle at the time of arrest, as alleged in Count III. Hence, his claim of error in Point I, as stated in his Point Relied On, with respect to Count III, is without merit.

■ Although not included in his Point Relied On, the appellant also challenges in his argument of Point I, the sufficiency of the evidence to show, as to Count III, that he possessed the drug paraphernalia alleged in the information, with the requisite

---

**3.** Section 195.010(17) defines drug paraphernalia as "all equipment, products, substances and materials of any kind which are used, intended for use, or designed for use, in ... manufacturing ... a controlled substance or an imitation controlled substance[.]"

intent to use them to manufacture methamphetamine. In that regard, the appellant contends that even if we should find that the evidence was sufficient to find that he possessed the drug paraphernalia as alleged, that such evidence was not sufficient for the jury to infer that he intended to manufacture methamphetamine, relying primarily on *State v. Lubbers,* 81 S.W.3d 156, 161 (Mo.App.2002). The failure to include this challenge in his Point Relied On would be a sufficient basis for our refusing to review it. *Dravenstott,* 138 S.W.3d at 191. However, even if we were to review, *ex gratia,* the appellant's challenge as to the sufficiency of the evidence to show an intent to manufacture methamphetamine, it would still fail.

In *Lubbers,* the defendant was charged with a violation of § 195.420.1, which reads:

> It is unlawful for any person to possess chemicals listed in subsection 2 of section 195.400, or reagents, or solvents, or any other chemicals proven to be precursor ingredients of methamphetamine or amphetamine, as established by expert testimony pursuant to subsection 3 of this section, with the intent to manufacture, compound, convert, produce, process, prepare, test, or otherwise alter that chemical to create a controlled substance or a controlled substance analogue in violation of sections 195.005 to 195.425.

The defendant was also charged with possession of a controlled substance, § 195.202. After being convicted of both offenses, the defendant appealed to the Eastern District of this court, which affirmed her conviction for possession, but reversed as to her conviction for possession of chemicals with intent to manufacture methamphetamine. In reversing, the court found that despite being in possession of a complete or near-complete methamphetamine lab and the ingredients necessary to manufacture methamphetamine, the evidence was still insufficient for the jury to infer that the defendant had the requisite intent to manufacture methamphetamine, citing *State v. Morrow,* 996 S.W.2d 679 (Mo.App.1999); *State v. Arles,* 998 S.W.2d 136 (Mo.App.1999); and *State v. Agee,* 37 S.W.3d 834 (Mo.App.2001). *Morrow* was decided by this court, while *Arles* and *Agee* were decided by the Southern District.

In reversing the defendant's conviction in *Lubbers,* the Eastern District stated:

> Unlike *Morrow, Arles,* and *Agee,* where the defendants did not possess any manufacturing equipment or other ingredients necessary for the manufacture of methamphetamine, Defendant possessed either a complete or near-complete lab. However, Boyfriend testified that the contents of the lab in their entirety belonged to him and that Defendant had never helped him manufacture methamphetamine. He also said that the items in question were not in the cab of the truck until after he and Defendant arrived at her friend's house when he moved the items inside to keep them from the weather.
>
> Even disregarding what Boyfriend said to disclaim Defendant's knowledge of the methamphetamine manufacturing process, nothing in his testimony on the state's behalf indicated that Defendant knew how to or intended to manufacture methamphetamine. The state failed to present any evidence that Defendant intended to manufacture methamphetamine.

81 S.W.3d at 162. Thus, while admitting that *Morrow, Arles,* and *Agee* were distinguishable from its case in that those cases did not involve the possession of complete or near-complete methamphetamine labs, the *Lubbers* court still concluded that the

evidence was insufficient for the jury to find that the defendant intended to manufacture methamphetamine.

We would first note, from the quote of the *Lubbers* court cited, *supra*, that in what appears to be an attempt to justify its reaching the same result as *Morrow*, *Arles*, and *Agee*, despite the fact that those cases were, by the court's own admission, decided on far less incriminating factors, bearing on the issue of an intent to manufacture methamphetamine, the court points to the Boyfriend's testimony that, if believed by the jury, would have exculpated the defendant from any involvement in the manufacture of methamphetamine. The court's reference to and juxtaposition of the Boyfriend's testimony is very curious given the court's standard of review, prohibiting it from considering any evidence that was contrary to the jury's verdict. *State v. Johnson*, 62 S.W.3d at 69–70. The court does go on to say, however, that disregarding the Boyfriend's testimony, the evidence was insufficient to infer that she had the requisite intent to manufacture methamphetamine. While one might not be surprised to see a recitation by the court of contrary facts in its general statement of facts, for the court to point to those contrary facts in its discussion of the sufficiency of the evidence is curious. One has to wonder then, if the court knew that it was required to disregard the Boyfriend's testimony, as being contrary evidence, why did it take the time to emphasize it? [4]

■ The *Lubbers* court, in concluding that the evidence was insufficient to find that the defendant intended to manufacture methamphetamine, points to the fact that there was "nothing in [the Boyfriend's] testimony on the state's behalf

indicating that Defendant knew how to *or* intended to manufacture methamphetamine." 81 S.W.3d at 162. (Emphasis added.) In using "or", which means "introducing a synonymous word or phrase," WEBSTER'S NEW WORLD COLLEGE DICTIONARY 951 (3rd ed.1997), the *Lubbers* court appears to be equating the "knowledge of how to manufacture methamphetamine" with an "intent to manufacture methamphetamine." Neither the law nor logic supports this.

An "intent to manufacture methamphetamine" was a proof element of the State's case against the defendant in *Lubbers*. *State v. Lubbers*, 81 S.W.3d at 161. As a matter of due process, for the State to convict the defendant of possession of a chemical with intent to manufacture methamphetamine, under § 195.420, it was required to prove, beyond a reasonable doubt, that she possessed a chemical, *with an intent to manufacture methamphetamine*. *State v. Agee*, 37 S.W.3d at 836. Under that statute, however, it was not required to prove that she had *knowledge of how to manufacture methamphetamine*. Likewise, in our case, in order to convict the appellant, on Count III, of possession of drug paraphernalia with intent to use to manufacture methamphetamine, under § 195.233.1, the State did not have to prove that the appellant had knowledge of how to manufacture methamphetamine, but that he had an intent to manufacture methamphetamine. In other words, knowledge of how to manufacture methamphetamine is not a proof element of either drug offense. Thus, it cannot be said, as a matter of law, that in order to convict the defendant in *Lubbers* of possession of a chemical with intent to manufacture methamphetamine, under § 195.420, or the ap-

---

**4.** The court's alluding to the Boyfriend's testimony has been criticized by at least one commentator. *See* Thomas C. Albus, *Legal Battles in Missouri's War on Methamphetamine,* 59 J.Mo.B. 60, 63–64 (March–April 2003).

pellant in this case of possession of drug paraphernalia with intent to use to manufacture methamphetamine, under § 195.233, the State was required to prove that the defendant had knowledge of how to manufacture methamphetamine.

The possibility exists that the *Lubbers* court, rather than meaning to elevate knowledge of how to manufacture methamphetamine to a proof element of the offense charged, was simply saying that evidence of such knowledge was relevant in proving in its case the requisite element of the defendant's intent to manufacture methamphetamine. In that regard, while we would agree that common sense and logic dictate that evidence of a defendant's knowledge of how to manufacture methamphetamine would be relevant in determining whether he actually intended to act, common sense and logic would also dictate that such evidence alone would not be enough to infer such intention. In other words, one's knowledge alone does not establish one's intent to act. Hence, one's knowledge of how to manufacture methamphetamine and one's intent to do so are not functional equivalents such that in requiring the State, in order to convict, under § 195.420 or § 195.233.1, to show that the defendant had an intent to manufacture methamphetamine, the legislature is not requiring a showing that he had the knowledge of how to manufacture methamphetamine.

■ Assuming that the *Lubbers* court was not suggesting that a defendant's knowledge of how to manufacture methamphetamine was a proof element of the drug offense charged, but was simply an incriminating factor thereof, the court seems to suggest that for the State to have shown such knowledge, the Boyfriend would have had to have testified that the defendant had helped him manufacture methamphetamine previously, or in other words, that

there had to be direct evidence of the defendant's knowledge. Such a suggestion would, of course, be incorrect in that it is well settled that circumstantial evidence is, in fact, sufficient to infer one's intent. *State v. Rollett,* 80 S.W.3d 514, 522 (Mo. App.2002).

■ An inference is a conclusion that is drawn from established facts, and must be both logical and reasonable. *State v. Agee,* 37 S.W.3d at 837. It seems to us that it would be both logical and reasonable to conclude from a defendant's possession of a complete or near-complete methamphetamine lab and all or nearly all the ingredients necessary to manufacture methamphetamine that the defendant had the knowledge of how to manufacture methamphetamine. While possible, it seems highly unlikely or improbable that someone would possess a complete or near-complete methamphetamine lab and all or nearly all the ingredients necessary to manufacture methamphetamine, without any knowledge of how to manufacture methamphetamine, or more importantly, without an intent to manufacture methamphetamine.

■ What is most curious about the holding in *Lubbers* is the fact that not only was there evidence that the defendant possessed a complete or near-complete lab and all or nearly all the ingredients necessary to manufacture methamphetamine, but that there was evidence that the manufacturing process had already begun and that the defendant was involved in bill collecting for the illicit drug enterprise. Evidence that the manufacturing process has already begun is sufficient to show an intent to manufacture in and of itself. *See State v. Hawthorne,* 74 S.W.3d 821, 823 (Mo.App.2002) (holding that the appellant's possession of 23.72 grams of *crushed* pseudoephedrine was sufficient to establish an intent to manufacture methamphetamine,

under § 195.420, in that the appellant not only possessed pseudoephedrine, but had also taken the additional step of crushing the pseudoephedrine tablets into powder form). In that regard, several of the jars that the defendant was found to possess had residue and a "two-layer liquid" in them. *State v. Lubbers*, 81 S.W.3d at 158. Samples from these jars tested positive for methamphetamine and ephedrine, *id.* at 159, indicating that the manufacturing process had already commenced. Also found was a sheet of paper containing a list denominated "common chemicals and items used in the product of methamphetamine." *Id.* at 158. In the defendant's purse, a white residue was found in a compact and 56 ephedrine hydrochloride tablets were also found in a pill bottle. *Id.* at 159. In addition, the purse was found to contain a "note with a dollar amount and some names written on it. *Id.* The note read: 'Have Dale ask Mike about my hundred dollars. He don't get anymore until he pays. No fronts. Dale or Mike will go talk to Roy. Have Roy give me my ring. Knock price off bill. Dale will give you 75 plus 7 plus my cookies." *Id.* This would suggest that the defendant was involved, along with her boyfriend, in the sale of methamphetamine, which alone would not be sufficient to infer an intent to manufacture, but would logically and reasonably be relevant evidence in making that determination. Given this evidence, along with the evidence of the defendant's possession of a complete or near-complete lab and all or nearly all the ingredients necessary to manufacture methamphetamine, it is difficult to understand how the *Lubbers* court could conclude, as a matter of law, that the evidence was insufficient to infer an intent to manufacture methamphetamine.

Further support for why *Lubbers* does not persuade us in resolving this appeal can be found in § 195.246.2. As we dis-cussed, *supra,* as to Count II, the legislature, in § 195.246.2, provides that the "[p]ossession of more than twenty-four grams of any methamphetamine precursor drug or combination of methamphetamine precursor drugs shall be prima facie evidence of intent to violate [§ 195.246]," making it unlawful to possess any methamphetamine precursor drug with the intent to manufacture methamphetamine. Hence, as to a violation of § 195.246, the legislature has made it crystal clear that the possession of more than twenty-four grams of psuedoephedrine is sufficient in and of itself to infer an intent to manufacture methamphetamine. And, while § 195.246.2 speaks to a violation of § 195.246, it speaks volumes about what the legislature of this state thinks is sufficient to establish an intent to manufacture methamphetamine. Thus, in cases such as ours, in which there is incriminating evidence that goes far beyond mere possession of more than twenty-four grams of ephedrine and pseudoephedrine, one would assume, extending the logic of the legislature, that evidence of possession of the necessary ingredients to manufacture methamphetamine and a methamphetamine lab would be deemed sufficient to infer an intent to manufacture.

As we discuss as to Count II, *supra,* applying § 195.246.2, the evidence of the appellant's possession alone of 101.83 grams of psuedoephedrine was sufficient for the State to make a submissible case on the issue of his intent to manufacture methamphetamine. It seems totally illogical then as to Count III, a violation of § 195.233, that that same evidence of possession *plus* the evidence of the appellant's possession of a complete methamphetamine lab and all the other necessary ingredients, except one, to manufacture methamphetamine, would be found to be

insufficient to find an intent to manufacture.

In *State v. Morrow,* one of the three cases relied upon by the *Lubbers* court in reaching its holding, the defendant appealed his convictions for possession of ephedrine with the intent to manufacture methamphetamine, in violation of § 195.246, and attempt to manufacture methamphetamine, in violation of § 195.211 and § 564.011. 996 S.W.2d at 680. He claimed, *inter alia,* that the trial court erred in overruling his motions for judgment of acquittal because the evidence was insufficient to show that he had the requisite intent to manufacture methamphetamine. *Id.* In finding that the evidence was insufficient to convict, the court found that evidence that the defendant possessed toluene, drain cleaner, ephedrine, and pseudoephedrine, some of the ingredients used to manufacture methamphetamine, along with an air tank, and that he had used methamphetamine two nights before his arrest, was insufficient for the jury to infer that the defendant intended to manufacture methamphetamine. *Id.* at 683. In so finding, the court pointed out that there was no evidence that the defendant had any laboratory or manufacturing equipment or the other ingredients necessary to manufacture methamphetamine. *Id.* In addition, the court also noted that there was no evidence that the defendant had any knowledge of how to manufacture methamphetamine. *Id.*

Although this court's decision in *State v. Morrow* references a lack of evidence as to the defendant's knowledge of how to manufacture methamphetamine, we do not read it as standing for the proposition that such evidence is required in every case in order to find an intent to manufacture methamphetamine. In other words, we do not read it as standing for the proposition

that knowledge of how to manufacture methamphetamine is a proof element of the offense. Rather, the *Morrow* court, in referencing the lack of evidence of the defendant's knowledge with respect to how to manufacture methamphetamine, and the lack of any laboratory or manufacturing equipment, was simply opining on what additional evidence would have been relevant in establishing an intent to manufacture. There is nothing in *Morrow,* which could be read as mandating direct or circumstantial evidence of the defendant's knowledge on how to manufacture methamphetamine in order to infer an intent to manufacture. The fact of the matter is that the evidence in *Morrow* fell far short of the evidence in *Lubbers* on the issue of an intent to manufacture, leading this court to conclude in *Morrow* that the evidence was insufficient to show such an intent.

The *Lubbers* court also relied on two decisions of the Southern District: *Agee* and *Arles.* In *Agee,* the defendant appealed her conviction for a violation of § 195.420, possessing chemicals with intent to manufacture methamphetamine. 37 S.W.3d at 835. On appeal, she challenged the sufficiency of the evidence to find that she had the requisite intent to manufacture methamphetamine. *Id.* at 835–36. There was evidence that she possessed 168 tablets of pseudoephedrine and a propane tank from a barbecue grill. *Id.* at 836. The court reversed, finding that the evidence was insufficient to infer the requisite intent to manufacture. *Id.* at 839.

In *Arles,* the defendant, like the defendant in *Agee,* was also appealing his conviction for a violation of § 195.420, claiming, likewise, that the evidence was insufficient to infer that he had the intent to manufacture methamphetamine. 998 S.W.2d at 137. There was evidence that the defendant possessed some of

the items necessary to manufacture methamphetamine, including lamp oil, acetone, several boxes of antihistamine tabs (containing suphedrine), coffee filters, air line tubing, propane, Coleman fuel, and alcohol. *Id.* at 138 n.3. There was no evidence that he possessed a complete or near-complete lab. The Southern District reversed the defendant's conviction for insufficient evidence to find the requisite intent to manufacture. *Id.* at 140.

Like *Morrow,* neither *Agee* nor *Arles* support the proposition that there has to be evidence that the defendant knew how to manufacture methamphetamine in order to infer an intent to manufacture it. Both *Agee* and *Arles* simply turned on the fact that there was no evidence that the defendants had the ingredients *and* equipment necessary to manufacture methamphetamine or that they had commenced the manufacturing process, as was the case in *State v. Hawthorne,* 74 S.W.3d 821 (Mo. App.2002), decided by the Southern District after *Agee* and *Arles.*

In *Hawthorne,* the defendant, like the defendants in *Agee* and *Arles,* appealed her conviction for a violation of § 195.420, claiming that the evidence was insufficient to find an intent to manufacture, citing *Arles* and *Morrow.* 74 S.W.3d at 822. The evidence favorable to the trial court's judgment was that the defendant possessed 23.72 grams of cold and allergy medicines, ground into a white powdery substance, which tested positive for ephedrine or pseudoephedrine, acetaminophen, and dextromethorphan. There was also evidence that at the time the white powdery substance was discovered, the investigating officer noticed a strong odor of ammonia, which is commonly used in the manufacture of methamphetamine. *Id.*

While recognizing that the defendant possessed fewer meth-related items than the defendants in *Arles* and *Morrow,* the court nonetheless affirmed the defendant's conviction. The *Hawthorne* court reasoned that because the defendant had actually crushed the cold tablets into a powder, a necessary step for manufacture, and that there was a strong odor of ammonia emanating from the refrigerator, where the powder was discovered, the evidence was sufficient to infer an intent to manufacture. *Id.* at 823. The *Hawthorne* court reasoned that because there was no legitimate purpose for the defendant's actions, in crushing cold tablets in bulk and mixing the substance with ammonia, an intent to manufacture amphetamine could be inferred. *Id.* There was no requirement in *Hawthorne* that there had to be direct evidence of the defendant's knowledge of how to manufacture methamphetamine or that the State had to establish such knowledge as a proof element.

Our review of the cases would indicate that there is no set formula as to what evidence is required to properly infer an intent to manufacture methamphetamine sufficient to convict of § 195.233, or any other drug offense, requiring proof of an intent to manufacture. In addition, other than *Lubbers,* there is nothing in the statutes or cases requiring proof of the defendant's knowledge of how to manufacture methamphetamine as an element of a violation of § 195.233, as charged in Count III. With respect to the recognized proof element of an intent to manufacture, it appears from the cases discussed that each case must turn on its own facts and circumstances. In our case, the evidence establishes that the appellant possessed 101.83 grams of pseudoephedrine *powder,* representing approximately 1500 crushed cold tablets at 60 milligrams each, as well as a liquid pseudoephedrine mixture, and that there was a chemical odor associated with the manufacture of methamphetamine

emanating from the vehicle. This evidence alone, under *Hawthorne,* would be sufficient for the jury to reasonably infer that he intended to manufacture methamphetamine. However, the evidence does not stop at a massive quantity of powdered pseudoephedrine, a liquid pseudoephedrine mixture, and a chemical odor. In addition, there is evidence that he possessed a near complete methamphetamine lab and all the other ingredients, except anhydrous ammonia, used to manufacture methamphetamine, and evidence that he was a methamphetamine user,[5] he was in possession of syringes used to inject it in liquid form, and he possessed a shotgun, all of which has been found as being indicative of an intent to manufacture. It is highly unlikely and improbable that someone, who is an admitted methamphetamine user, who is found in *his* vehicle, which is emanating a chemical odor associated with the manufacture of methamphetamine, and is in possession of a complete or near-complete methamphetamine lab and all the ingredients, except one, necessary to manufacture methamphetamine, including 101.83 grams of powdered pseudoephedrine and a pseudoephedrine mixture, along with syringes and a shotgun, would not have an intent to manufacture methamphetamine. Improbable or not, the question is simply whether it was reasonable for the jury to infer from this overwhelming amount of evidence that the appellant intended to manufacture methamphetamine. It is hard to imagine that there could be a case where there would be more incriminating factors establishing an intent to manufacture methamphetamine than this case. And, of course, as our discussion makes clear, there are numerous cases in which, on far less evidence, a finding of such an intent has been found to be proper.

Point denied.

## II.

In Point II, the appellant claims that the trial court erred "in overruling [his] motion in limine and allowing the [S]tate to elicit from Rosalee Woods that [he] had used methamphetamine frequently," because such evidence constituted inadmissible evidence of uncharged crimes. Specifically, he claims that Woods' testimony concerning his prior methamphetamine use constituted inadmissible evidence of uncharged crimes in that it directly implicated him in the use of an illegal substance, and such an implication, even if true, is both logically and legally irrelevant to proving he was guilty of the charged offenses.

■ The record reflects that, initially, the trial court took the appellant's motion *in limine* to prohibit evidence of his prior methamphetamine use under advisement. However, on the second day of trial, after the State had completed its case-in-chief, but before the defense had begun its case, the State asked the trial court to rule on the appellant's motion *in limine.* In that regard, the State argued that the evidence of the appellant's methamphetamine use was admissible to refute the defense's obvious trial strategy that he did not know about the meth-related items that were seized from his vehicle. The court agreed and overruled the motion, stating: "It would also seem to me now, after the opening statements and some of the cross-examination, that ... if he was using Methamphetamine with Mrs. Woods, that it would be probative weight of his, against his claim that he had no idea that she had any Methamphetamine in the car[.]"

■ The salutary purpose of a motion *in limine* is to "point[ ] out to the

---

5. We discuss, *infra,* the propriety of the admission of that evidence.

court and to opposing counsel which anticipated evidence might be objectionable." *State v. McCullum*, 63 S.W.3d 242, 259 (Mo.App.2001). However, a trial court's ruling on a motion *in limine* seeking to exclude evidence is considered interlocutory in nature and is subject to change during the trial. *Id.; State v. Purlee*, 839 S.W.2d 584, 592 (Mo. *banc* 1992); *Bowls v. Scarborough*, 950 S.W.2d 691, 702 (Mo. App.1997); *Anderson v. Rojanasathit*, 714 S.W.2d 894, 895 (Mo.App.1986); *State v. Dowell*, 25 S.W.3d 594, 601 (Mo.App.2000). As such, a motion *in limine* preserves nothing for appeal. *Id.* To properly preserve a challenge to the admission of evidence, the objecting party must make a specific objection to the evidence at the time of its attempted admission. *State v. Purlee*, 839 S.W.2d at 592; *Bowls*, 950 S.W.2d at 702; *Anderson*, 714 S.W.2d at 895. "Missouri courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *State v. McCullum*, 63 S.W.3d at 259.

In light of the foregoing principles of law, the appellant's filing of a motion *in limine*, seeking to prohibit the State from introducing evidence of his prior use of methamphetamine, did not preserve his objection to the admission of that evidence at trial. To properly preserve his objection, the appellant was required to object to the evidence at the time of its admission by the State. However, the very evidence that the appellant sought to exclude by his motion *in limine*, he subsequently chose to admit. In that regard, the record reflects that rather than allowing the State to first broach, with the jury, the subject of the appellant's use of methamphetamine, defense counsel, apparently believing that ev-

idence of this fact would be less damaging to the appellant if it were presented by the defense, inquired of Woods on direct examination:

Q. Had you seen [the appellant] use drugs before?

A. Yes.

Q. Had he used Meth with you before?

A. Yes.

On cross-examination of Woods, the State returned to the subject:

Q. And when [the appellant] was living at your house, you were using Methamphetamine?

A. Yes.

Q. And you used Methamphetamine with [the appellant]?

A. Yes.

Q. Did you observe him inject it?

A. Yes.

Q. And how many times did you use Methamphetamine with him?

A. Every time I did a shot, he did one.

Q. A lot?

A. A lot.

Q. More than 20 times?

A. Yes.

Understandably, the State contends that having first introduced the evidence of his prior methamphetamine use, the appellant affirmatively waived any objection to its admission. In that regard, the State argues that procedurally, to properly preserve an objection to the admission of the evidence of his prior methamphetamine use, the appellant was required to wait until the State actually sought to admit the evidence and then object in that the trial court's ruling denying the appellant's motion was merely interlocutory. Having objected and assuming that the court overruled the objection, the appellant could then appeal the court's ruling. For his

part, the appellant contends that despite the fact that he was the party who first introduced the evidence, to which he now objects on appeal, the filing of his motion *in limine* and the trial court's overruling it made it clear that his introduction of the alleged objectionable evidence was not intended as a waiver of his objection. In support of his contention, he cites *State v. Stillman*, 938 S.W.2d 287, 289 (Mo.App. 1997). In contending as he does, the appellant is asking us to turn our backs on well settled and well-reasoned law as to the preservation of error with respect to motions *in limine*. We refuse to do so.

In *Bowls v. Scarborough*, the appellants claimed trial court error with respect to the court's allowing certain evidence at trial. 950 S.W.2d at 701. At trial, the appellants filed a motion *in limine* seeking to prohibit the introduction of that evidence, which was overruled. *Id.* And, like the appellant here, rather than waiting for the respondents to actually offer the evidence, objecting to it, and allowing the trial court to rule, the appellants chose to jump the gun and introduce the evidence first, as a matter of trial strategy. *Id.* at 701–02. The respondents, as the State does here, contended on appeal that the appellants had waived any objection to the challenged evidence by their having first introduced it at trial. *Id.* at 701. We agreed, holding that to properly preserve an objection to the admission of evidence sought to be excluded by a motion *in limine* that has been denied by the trial court, the movant must wait until an attempt is actually made to introduce the evidence and then must make a specific objection to its admission. *Id.* at 702.

In *Anderson v. Rojanasathit*, the plaintiffs made several oral motions *in limine* to exclude evidence concerning their drug usage and criminal convictions, which were overruled. 714 S.W.2d at 895. Seeking to lessen the impact of this evidence on their case, the plaintiffs introduced the evidence first. *Id.* On appeal, they claimed that the trial court's rulings on their motions *in limine* were erroneous and that they were prejudiced thereby in that they were forced, as a matter of trial strategy, to elicit the very evidence that they had sought to exclude by their motions. *Id.* In rejecting the plaintiffs' strategy claim on the basis that they had waived any objection to the challenged evidence by introducing it, the court pointed out that in order to properly preserve an objection to the evidence, the plaintiffs had to wait until the evidence was actually offered and then make an objection. *Id.* at 895–96.

In *State v. McCullum*, the defendant filed a motion *in limine* to exclude evidence concerning his prior bad acts and certain municipal violations, which was sustained. 63 S.W.3d at 258. During the course of the trial, despite the trial court's sustaining the appellant's motion, it became evident to defense counsel that the trial court was leaning towards changing its ruling and allowing the evidence sought to be excluded if the defendant chose to put on evidence, through the defendant or an expert witness, concerning the defendant's alleged diminished capacity or his lack of the requisite mental state to commit the offense. *Id.* at 258–59. In fact, when asked by defense counsel whether the trial court would allow the evidence sought to be excluded if the defense called the defendant or his expert to testify as to the defendant's requisite intent for conviction, the trial court indicated that it was "leaning" that way. *Id.* at 259. And, when asked whether the trial court would allow the challenged evidence as to his prior bad acts and municipal violations if the defendant did *not* seek to introduce the evidence as to his intent, the court advised that it would *not*. *Id.* Armed with this information, the defense chose to rest

without presenting the evidence as to his intent in order to prevent the State from introducing the evidence sought to be excluded by the motions *in limine. Id.*

On appeal, the appellant, in effect, complained that the trial court erred in ruling on his motions *in limine* and that he was prejudiced thereby, in that it "materially impacted his decision not to testify." *Id.* at 260. In denying the defendant's claim, the court recognized that defense counsel, in choosing not to present evidence of the defendant's intent, made a strategic trial decision in response to the trial court's interlocutory ruling as to his motions *in limine. Id.* Nonetheless, the court pointed out that the defense was not forced to make that decision, but could have presented evidence of his intent and then objected if and when the State attempted to introduce evidence of the defendant's prior bad acts. *Id.* And, if the objection were overruled, the defense had the option to appeal. *Id.*

■ Given the foregoing case law, it is clear that, with respect to a motion *in limine,* trial strategy or not, to properly preserve an objection to the admission of evidence, which is the subject of the motion, the movant must wait until the challenged evidence is actually offered and then make a specific objection to its admission. Hence, despite the trial court's overruling of the appellant's motion *in limine,* seeking to exclude the evidence of his prior methamphetamine usage, and regardless of any trial strategy that may have been reasonably precipitated by that ruling, the appellant's pre-emptive introduction of the challenged evidence waived his objection thereto on appeal.

As we noted, *supra,* in contending that his introduction of the evidence concerning his methamphetamine usage, he did not waive his objection to the admission of that evidence, the appellant cites *State v. Still-* *man,* 938 S.W.2d at 289. There, the defendant was convicted of trafficking drugs in the second degree. *Id.* Before trial, defense counsel filed a motion to suppress a single rock of crack cocaine discovered in the vehicle the appellant was driving, which the trial court denied. *Id.* at 290. During the State's case-in-chief, defense counsel consistently objected to any testimony relating to the crack cocaine. *Id.* However, for some unexplained reason, when the State moved to introduce the rock of crack cocaine, counsel stated that he had "no objection." *Id.* On appeal, the defendant claimed that the trial court erred in admitting the crack cocaine. *Id.* at 289.

The State, as one would obviously expect, argued that the defendant had waived any objection to the admission of the crack cocaine by stating, when it was offered for admission, that he had "no objection" to its introduction. *Id.* at 290. The *Stillman* court disagreed, explaining that, although "[t]he established rule in Missouri holds that stating no objection when evidence is introduced constitutes an affirmative waiver of appellate review of the issue," because "the trial court and opposing counsel understood that [defense] counsel did not intend to waive the carefully made record on the motion to suppress[,] ... [t]o now rule a waiver of this point ... would be a hypertechnical application of the [objection] requirement[.]" *Id.* In other words, the *Stillman* court found that, under the circumstances, counsel was objecting to the admission of the evidence in question, even though he clearly stated the opposite, and that the trial court and opposing counsel understood that he was objecting, even though he said he was not. Thus, although the court, in ruling as it did, indicated that to do otherwise would be to make a "hypertechnical application" of the well established rule of

law requiring an objection to the admission of evidence to preserve the issue for appeal, *see State v. Zelinger*, 873 S.W.2d 656, 660 (Mo.App.1994); *State v. Daly*, 798 S.W.2d 725, 729 (Mo.App.1990), it appears that the *Stillman* court, based on the specific circumstances of the case, simply was refusing to apply the rule at all, choosing, instead, to look behind what was actually said and attempting to divine what was understood by the parties.

Regardless of the wisdom of *Stillman*, it is clearly distinguishable on its facts and is not persuasive in our case. In *Stillman*, the issue was whether a party had waived any objection to the admission of evidence by failing to object when the evidence was offered by the other party. Here, the issue was whether the appellant had waived any objection to the admission of the challenged evidence by introducing the evidence himself, as a matter of trial strategy, after the trial court denied his motion *in limine* seeking to exclude it. This case is governed by *Bowls, Anderson*, and *McCullum*, under which the appellant waived any objection to the evidence that he had frequently used methamphetamine with Woods.

Point denied.

### III.

■ In Point III, the appellant claims that the trial court plainly erred in failing to exclude, *sua sponte*, the testimony of Woods that the appellant refused to consent to a search of his vehicle and failing to prohibit the State from arguing the same in closing argument because it violated his Fourth Amendment right to be free from unreasonable searches and seizures. Specifically, he claims that he "was absolutely privileged to refuse consent to search, and the [S]tate could not punish him for exercising this right" by eliciting Woods' testimony and arguing in closing argument that his refusal evinced consciousness of guilt.

The appellant concedes that he did not properly preserve his claim of error in this point for appellate review because he failed to object at trial or raise the claim in his motion for a new trial. *State v. Solis*, 87 S.W.3d 44, 47–48 (Mo.App.2002). Hence, he requests plain error review under Rule 30.20.[6]

■ Rule 30.20 provides, in pertinent part, that "[w]hether briefed or not, plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or a miscarriage of justice has resulted therefrom." The plain error rule should be used sparingly and does not justify a review of every alleged trial error that has not been properly preserved for appellate review. *State v. Carr*, 50 S.W.3d 848, 853 (Mo.App.2001). In determining whether to exercise its discretion to provide plain error review, the appellate court looks to determine whether on the face of the appellant's claim substantial grounds exist for believing that the trial court committed a "plain" error, which resulted in manifest injustice or a miscarriage of justice. *State v. Dudley*, 51 S.W.3d 44, 53 (Mo.App.2001). "Plain" error for purposes of Rule 30.20 is error that is evident, obvious and clear. *State v. Hibler*, 21 S.W.3d 87, 96 (Mo.App.2000).

■ If the appellate court chooses to exercise its discretion to conduct plain error review, the process involves two steps. First, the court must determine

**6.** All rule references are to the Missouri Rules of Criminal Procedure, 2004, unless otherwise indicated.

whether the trial court committed error, affecting substantial rights, that was evident, obvious and clear. *Id.* As in the case of our review for "regular" error, not every obvious error found in plain error review mandates reversal. *Carr,* 50 S.W.3d at 853. In the case of review for "regular" error, to be reversible, the found error must have prejudiced the appellant. *State v. Taylor,* 67 S.W.3d 713, 715 (Mo.App. 2002). Likewise, in the case of review for plain error, the error found must have prejudiced the appellant, except that such prejudice must rise to the level of manifest injustice or a miscarriage of justice. *State v. Cole,* 71 S.W.3d 163, 170 (Mo. *banc* 2002). Thus, even if obvious and clear error is found in the first step of the review, the second step of plain error review requires the court to determine whether manifest injustice or a miscarriage of justice resulted therefrom. *Hibler,* 21 S.W.3d at 96. Even assuming that there was clear error, as claimed, inasmuch as we do not find substantial grounds on the face of the appellant's claim for us to believe that he suffered manifest injustice or a miscarriage of justice as a result of the trial court's failure to exclude, *sua sponte,* Woods' testimony regarding his refusal to consent to a search of his vehicle, for the reasons discussed, *infra,* we decline plain error review.

The State, during its cross-examination of Ms. Woods, elicited the following testimony:

Q. At the time Trooper Bearden was at the car with you and Mr. Mickle, at one point, he asked to search the car, didn't he?

A. Yes.

Q. And Mr. Mickle said, no, didn't he?

A. Yes.

During its closing argument, the State asked the jury to consider all the evidence when making its determination as to the appellant's guilt, including the fact that the appellant had refused to consent to a search of his vehicle, arguing:

And don't forget when Trooper Bearden asked, can I search your car, he said, no. Now, that is within his rights, but taken together with all the other facts you know, why would he say no, unless he knew that there was a lab in the car. He did it because he didn't want Bearden to search.

Even if we assume, *arguendo,* that the appellant is correct that in allowing Woods to testify concerning his refusal to allow a search of his vehicle and allowing the State to argue this fact in closing argument, the trial court plainly erred, the appellant would not be entitled to appellate relief unless he can demonstrate that it resulted in manifest injustice or a miscarriage of justice. *Cole,* 71 S.W.3d at 170. It is readily apparent that he cannot do that.

As noted, *supra,* for us to grant plain error review, it must be readily apparent, on the face of the appellant's claim, that he suffered manifest injustice or a miscarriage of justice, or in other words, it must be readily apparent that, but for the admission of the evidence concerning the appellant's refusal to permit a search of his vehicle, the outcome of the appellant's case would have been different. *State v. Barriner,* 34 S.W.3d 139, 150 (Mo. *banc* 2000). In other words, it has to be readily apparent on the face of the appellant's claim that the "erroneously admitted evidence so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have

reached a different conclusion but for the erroneously admitted evidence." *Id.* (internal citations omitted).

The appellant contends that the "evidence against [him] was extremely weak, ... [i]t is probable that he would have been acquitted but for the [S]tate's overreaching on this point." The State, however, contends that the challenged evidence, primarily bearing on the issue of possession of the meth-related items seized, when considered with and balanced against all of the evidence properly admitted, did not so influence the jury that the outcome of the appellant's case would have been any different.

As we discuss, *supra,* there is a plethora of evidence from which the jury could have reasonably inferred that the appellant possessed the meth-related items seized from his vehicle at the time of his arrest. It is not readily apparent to us that had the challenged evidence been excluded that the jury would have concluded that he did not possess the items so as to render a different outcome of his case. Likewise, given this evidence of possession and the other evidence discussed, *supra,* bearing on the issue of an intent to manufacture, as to all three counts, there is also a plethora of evidence from which the jury could have reasonably inferred that the appellant had the requisite intent to manufacture methamphetamine. Thus, it is not readily apparent to us that had the challenged evidence been excluded that the jury would have concluded otherwise as to the appellant's intent to manufacture so as to render a different outcome in the case. As such, we decline to exercise our discretion

to review the appellant's claim in this point for plain error, under Rule 30.20.

Point denied.

## IV.

In Point IV, the appellant claims that the trial court plainly erred in giving Instructions No. 7 and 9, the State's verdict directors as to Counts II and III, because they did not conform to MAI–CR 3d 325.32 and MAI–CR 3d 325.22, the mandatory instructions for submitting those offenses. Specifically, he claims that the instructions were in error because they did not include the definition of possession, which was instead submitted separately in Instruction No. 11.

The appellant concedes that he did not properly preserve his claim of error in this point for appellate review because he failed to object to the court's instructions, as required by Rule 28.03. Hence, he once again requests plain error review under Rule 30.20.

■ Before addressing the merits of the appellant's claim, we must first address the State's contention that the appellant is precluded from raising this issue under Rule 30.20. In that regard, the State argues that because the "[a]ppellant said he had no objection to the instructions, any complaint about those instructions has been waived. Therefore, this Court should not review appellant's claim." In *State v. Wurtzberger,* 40 S.W.3d 893, 898 (Mo. *banc* 2001), the Missouri Supreme Court ruled otherwise such that the appellant did not waive plain error review of his claimed instructional error by his stating no objection to the challenged instructions.

As we discuss, *supra,* plain error review is only available where the appellant's claim, on its face, establishes substantial grounds for believing that the trial court committed a "plain" error, i.e., error that is evident, obvious and clear, which resulted in manifest injustice or a miscarriage of justice. *Hibler,* 21 S.W.3d at 96. Specifically, "[i]n the context of instructional error, reversible plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict." *State v. Barnaby,* 91 S.W.3d 221, 225 (Mo. App.2002). Inasmuch as we do not find substantial grounds on the face of the appellant's claim for us to believe that the trial court's instructional error affected the jury's guilty verdicts on Counts II and III of this case, for the reasons discussed, *infra,* we decline plain error review.

When addressing alleged instructional error, we begin with the proposition that if there is an MAI–CR instruction made applicable by the law or the Notes on Use, the trial court is required to instruct the jury in accordance with that instruction. Rule 28.02(c). The failure to give an instruction in accordance with an MAI–CR or any applicable Notes on Use is error, the prejudicial effect to be judicially determined. *State v. Barnaby,* 91 S.W.3d at 225.

The State concedes that the trial court erred in not including in the court's verdict directors, Instructions No. 7 and No. 9, submitting Counts II and III, the definition of possession, as mandated by MAI–CR 3d 325.32 and MAI–CR 3d 325.22. The State, however, contends that it is not

readily apparent that there was resulting manifest injustice or a miscarriage of justice to the appellant in that possession, along with several other terms, was correctly defined in Instruction No. 11:

The following terms as used in these instructions are defined as follows:

. . .

**Possess, Possessed, or Possession.**
Means either actual or constructive possession of the substance. A person has actual possession if the person has the substance on his or her person or within easy reach and convenient control. A person who, although not in actual possession, has the power and intention at a given time to exercise dominion or control over the substance either directly or through another person or persons is in constructive possession of it. Possession may also be sole or joint. If one person alone has possession of a substance, possession is sole. If two or more persons share possession of a substance, possession is joint.

"Absent a showing to the contrary, we must presume that the jury properly followed the trial court's instructions in rendering its verdict." *State v. Chavez,* 128 S.W.3d 569, 578 (Mo.App. 2004). As such, we presume, here, that the jury considered the proper definition of possession, as defined in Instruction No. 11, while deliberating on the appellant's guilt on Counts II and III, in Instructions No. 7 and 9. The appellant, however, contends that the record reflects otherwise, pointing to the jury's written note to the court during deliberations, which stated: "We, as the jury, are unsure of the definition of knowing, knowing, knowledge or knew. And the majority of us believe that, if you know of a situation, according to the definition, therefore, you are in possession of the paraphernalia." While the jury's

note to the trial court might demonstrate confusion as to the concept of possession, it does not demonstrate that any such confusion resulted from the definition of possession being given in Instruction No. 11, rather than in Instructions No. 7 and 9. In any event, in response to the note, the trial court directed the jury back to the instructions, instructing: "The Court is not authorized to clarify any instruction[,] you are to be guided by the instructions given to you.", which would have included Instruction No. 11 containing the definition of possession.

Because it is not readily apparent from the appellant's claim that manifest injustice or a miscarriage of justice resulted to the appellant by reason of the trial court's failure to include the definition of possession, as required, in its verdict directors, Instructions No. 7 and 9, submitting Counts II and III, we decline plain error review as to the claimed instructional error in this point.

Point denied.

### Conclusion

The judgment of the appellant's jury convictions for attempted manufacture of methamphetamine, § 195.211; possession of pseudoephedrine with intent to manufacture methamphetamine, § 195.246; and possession of drug paraphernalia with intent to use to manufacture methamphetamine, § 195.233, is affirmed.

LOWENSTEIN, BRECKENRIDGE, SPINDEN, SMART, ELLIS, HOWARD, NEWTON, HOLLIGER, HARDWICK, JJ, and MARTIN, SR. J., concur.